## IN RE TRUSTEESHIP OF ED L. CLARK.

**TRUSTS:** Management—Trustee by Will—Control by Court. The
1  expenditures of a trustee appointed *by will* are not beyond control by the probate court, even though the will clothes the trus-

tee in such matter with the widest possible discretion. But such control by the court is limited to (a) saving, (b) enlarging, or (c) defending, the trust itself. (Secs. 225, 3293, Code, 1897.)

PRINCIPLE APPLIED: 1. A will created a trust and provided that the trustees should "take charge of and control such legacies and . . . . to hold and control such property as may seem best in their judgment to advance the interests of such legatee". The beneficiary brought an action to compel the · trustees (a) to file proper reports and (b) to allow a higher rate of interest than they were willing to pay. Trial was had, and the relief asked was granted.

2. The said beneficiary also had a contract with one of the trustees ·individually, under which he was to have a certain tract of land. The land was sold, and the beneficiary claimed in the above action that the trustee was liable *as trustee* for the amount received, and the court so held. *But this land deal was entirely foreign to the trust*; and on appeal it was held that the land deal was no part of the trust. The trustees refused to make, out of the trust funds, any allowance to the attorneys for the beneficiary for their services. *Held*, the court had power to enforce such allowance in so far as the services had relation to enforcing the filing of reports and the payment of interest; that the court had no power to enforce any allowance for the services relating to the land deal.

**TRUSTS: Management—Unauthorized Services—Allowance by Court.**
2 The court may, in a proper case, compel a trustee appointed by will to make an expenditure out of the trust funds in payment of services performed in preserving and protecting the estate itself, even though the services were, in the first place performed without any authorization by the court.

**APPEAL AND ERROR: Review—Scope and Extent.** An application to compel trustees under a will to make an allowance to
3 attorneys for services rendered to the beneficiary of the trust in preserving the trust will not be tried *de novo* on appeal.

**TRUSTS: Management—Allowance of Attorney Fees.** The court
4 cannot make an allowance for attorney fees out of trust funds when the only evidence before the court as to the value of the services was expert evidence as to the total value of three items of services, one of which items was wholly foreign to the trust.

**EVIDENCE: Opinion—Value—Improper Inclusion of Facts.** An
5, 7 opinion as to the total unitemized value of several items of service is wholly nullified when it appears that some of the items included in the estimate are material but wholly unallowable.

PRINCIPLE APPLIED: Attorneys were employed by the beneficiary of a trust in an action against the trustees to protect and preserve the trust itself. The attorneys rendered services, also, in one feature of the action, which were wholly foreign to the trust. The attorneys asked the court to make them an allowance out of the trust funds for their services. The only evidence as to the value of the services was a lump sum estimate for *all* the services. *Held*, the record presented an entire failure of evidence on the question of value.

**APPEAL AND ERROR:** Review—Scope—Petition for Rehearing. A petition for rehearing, in a pending cause, cannot have the effect of reaching back and acting as a rehearing of a former officially published opinion on other features of the same case.

**EVIDENCE:** Opinion—Value—Improper Inclusion of Facts.
5, 7

*Appeal from Monroe District Court.*—D. M. ANDERSON, Judge.

TUESDAY, NOVEMBER 16, 1915.

REHEARING DENIED TUESDAY, FEBRUARY 22, 1916.

ED L. CLARK is the cestui in a trust created by the will of his father, which appoints trustees. The appellees, attorneys at law, were made an allowance out of said trust funds, without the consent of the said trustees. This appeal brings up the validity and propriety of this allowance.—*Reversed* and *Remanded.*

*D. W. Bates* and *John T. Clarkson,* for appellants.

*John F. Abegglen* and *N. E. Kendall,* for appellees.

SALINGER, J.—The father of Ed L. Clark named Grant, John and Homer Clark as trustees in his will. In so far as is material here, that will provides as follows:

1. TRUSTS: management: trustee by will: control by court.

"I will, direct and constitute (named trustees) without bond to take charge of and control such legacies as may come to Ed L. Clark by virtue of this my last will and testa-

ment to hold and control such property as may seem best in their judgment to advance the interests of such legatee, and if, in their judgment, it should be deemed advisable to give said legatee control of said estate, they are empowered to do so.''

In effect, the appellant presents that the trust created by the will is so absolute as that no court and no person, except the trustees named in the will, can pay for any services out of the trust fund created by said provision in the will; and that, therefore, the trustees being unwilling to make this payment, the court was without authority to compel them to make it inclusive, of necessity, that the *cestui* could do nothing by way of contract, and have no services performed for him which would authorize a court to allow payment to be made out of said trust fund. It is contended, as it must be, that whatever the power of the court over trustees, it has none over such as are appointed by the person who creates the trust, and not by the court. There are, however, some concessions which somewhat modify this contention. The appellant emphasizes that there is no pretense of advance authority from the court to carry on the litigation for which allowance was finally made. In appellant's motion to dismiss, it is said:

''That the court, and no other person, has the right or jurisdiction to compel the turning over of said funds to said ward, or to any other person.'' (Ab. 39.)

Finally, it is said in argument that appellees are mistaken in saying that appellants ''advance the proposition that no court has any jurisdiction to examine the conduct of the trustees in relation to a trust fund, nor to control in any manner, or to any extent, their administration of the trust estate''. The actual claim of the appellant is perhaps indicated by this statement in argument:

''The complaint is that the court has no right to ingraft burdens upon this trust fund that were not contemplated by

the one who created the trust, were not authorized by anyone who had the right or authority to authorize them, and were not, in fact, for the benefit of the *cestui que trust.*"

It is provided in Sec. 225 of the Code of 1897 that the district court has original and exclusive jurisdiction "in all matters in relation to the appointment of executors and trustees, and the management and disposition of the property of and settlement of such estates". And Code Sec. 3293 is that "trustees appointed by will or by the court  .  .  . shall be subject to control or removal by it in the same manner, and others appointed". While, in *Perry v. Drury,* 56 Iowa, at 67, 68, there was refusal to control trustees, this was based on the proposition that the persons in question were not to be regarded as trustees, in the sense of the Code sections just referred to; and it was held that, as to trustees within such statute, a court of equity would always interfere if the trustee, through any cause, failed to properly administer trusts conferred by will; that the powers of the court of chancery could be invoked to control, restrain and energize him in the discharge of his duties; and that he might be adequately dealt with, even to the extent of removal. When trustees refuse to act, they may be removed by the court and others appointed in their stead. *In re Estate of Petranek,* 79 Iowa 410. In *Wolfe v. Jaffray,* 88 Iowa 358, 364, it is held that, though there has been no default in the execution of the trust as to payment of annuities, and though nothing further is due during the lifetime of a named person, yet a court of equity will grant the beneficiaries protection, on the ground that the trustee is not doing his duty, or is doing wrong as trustee. Of course, all this is not absolutely in point here, but does tend to meet the contention that no court has any control over the administration of a trust by will, despite statutes which, in terms, give the district court sitting in probate control, even to the extent of removal, over "trustees appointed by will or by the court".

2.

This condition of statute and case law satisfies us that the courts may, in a proper case, control the action of trustees created by will. It cannot be that the creator of a trust by will can absolutely exclude the courts from controlling any and all expenditures from the trust fund, or from making any allowances from such fund except upon the consent of the trustees, unless a citizen of the state has the power to set aside its laws. To give the maker of a will the prerogative of completely ousting the courts of jurisdiction in the premises is to allow him to nullify the statute provision which gives control of trustees appointed by will, even to the extent of removal. If the king can do no wrong, there is no need of law to punish him if he do wrong. If whatever the trustee by will does is final, and may never be the subject of judicial challenge, it was idle to make statutes permitting him not only to be controlled, but to be removed. If he is the absolute and final judge of what may or may not be done with the trust fund or expended therefrom, when could a case arise in which the court could exercise control over him and his administration; when could there be occasion to use the power to remove him? In fewer words, the testator cannot make a will which makes the trustee created by the will the sole judge of the propriety of expenditures from the trust fund, without thereby making nugatory the statutes which allow the courts to control the administration of trustees by will, and on proper occasion to remove them.

Not only was there no power to make the trustee such absolute master of the trust fund, but by any reasonable construction the testator should not be held to have thus intended. The foundation of the trust is the feeling that the trust is necessary. This carries with it the desire that nothing shall be done to impair its efficacy; that all things necessary to preserve and accrete it shall be done. No matter how much

confidence the creator of the trust had in the trustees named by him, we must still assume that this confidence was not a more powerful feeling than the desire that the trust fund should be saved from spoliation, and should be expended whenever the expenditure would benefit the object of the trust. The confidence in the trustee must not be held to have gone beyond the desire to make the trust effective. No matter how much confidence there was in the trustees named, we should not hold that the maker of the will intended that they might arbitrarily refuse to sanction an expenditure which was necessary, say, to keep the trustees from looting the fund. The controlling desire is expressed by the words of the will that there is confidence that the judgment of the trustees will "advance the interests of such legatee".

We believe it to be reasonable construction, which harmonizes all the factors involved in this controversy, to hold that, while the court may control the administration of a trust created by will, it may do so only in a proper case; that, while it may not do so upon a mere difference of judgment between the court and the trustees, it may intervene and compel expenditures from the trust in whatsoever is by the court found to be for the benefit of the trust, for its preservation, and to shield it from spoliation or gross mismanagement. In other words, where such a trust as this exists, the court is not authorized to make allowances therefrom for any and all purposes that may be deemed by it to be a just and proper expenditure, though general equity might demand the payment; it may not arrogate to itself the legitimate discretion of the trustees so as, for instance, to order payment for clothing bought by the *cestui* which the court thinks a reasonable purchase, while the trustees hold to the contrary. But this is all consistent with the limitation heretofore indicated, to wit: If the expenditure be to save, enlarge, or defend the trust itself, the statutory power referred to gets its application, and within those limits is its proper scope.

3.

Thus we agree that neither directly nor indirectly may that be done which destroys or injures the trust created by the will,. but hold that the courts have power, notwithstanding the broadest language conferring discretion in the trustees named, to order payments from the trust fund in what we have indicated to be proper cases. We do not agree that any question of jurisdiction is involved. For illustration, if there be power to make allowance for services done upon advance court authorization, there is power of allowance upon ratification of what has been done without original authorization.

2. TRUSTS: management: unauthorized services: allowance by court.

The controlling question is whether payment was ordered for what is, in the sense referred to above, for the benefit of the estate. To a certainty, some of the services rendered were such. Surely, the trustees may not say this is not so when part of what resulted from the services allowed for was to compel them to file proper reports as trustees, and to allow a higher rate of interest than that which they were willing to pay. Surely, a good-faith claim—and nothing indicates the contrary—that these trustees should be compelled to make a proper accounting, and an attempt to recover of them a forfeiture for failure to make reports, are for the benefit of the trust estate. Surely, trustees found wholly or partly in the wrong should not be heard to say that it is within their discretion whether the services that, in part at least, made them properly perform their duties, should be paid for out of the fund over which they had been given dominion in the will. Merely by way of illustration—should it be held to have been intended by the testator that if, to keep alive, his son needed $50 a quarter, and the trustees named refused to give it, and court action obtained it, the trustees should be allowed to veto

3. APPEAL AND ERROR: review: scope and extent.

payment for obtaining such order? Equally clear is it that here, as elsewhere, while the financial value of the benefit obtained for the estate is to be taken into consideration in making an allowance for the services, that is not all that is involved, and something must be trusted to the trial court on whether efforts made were reasonably and justifiably made, and what is just compensation therefor, even though it transpire, at the end of proper litigation, that the financial benefit is not as large as is desirable. And though it should be taken into consideration what proportion the allowance bears to the fund upon which it is charged, that cannot be controlling. Granting that an expenditure from a trust fund is justified and merely compensatory, it is no more a defense for the trustee that the payment of a just debt will deplete the treasury than is the same defense by an individual. And we cannot review such allowances as this *de novo*.

II. But without resort to review *de novo*, we are required to interfere if an allowance has been made for something that is not for the benefit of the estate. It seems that the *cestui* Ed L. made a contract with Homer Clark, who happens to be a trustee under this will, and one Frank, who is not such trustee, for labor to be done by Ed L. for these others. It was agreed, in turn, that therefor Ed L. should be conveyed a piece of land. Somehow Frank sold this land and got $3,200 for it. In no view did more result from this than that Frank, and possibly Homer, owed Ed L. $3,200, because they had appropriated the proceeds of a piece of land, when those proceeds should have paid Ed L. for labor done. One item of service allowed for is the obtaining an order, in effect, that this $3,200 was chargeable to the trustees under the will as "constructive trustees". The court below thus held that the 40 acres in question, which had been sold by Frank, in equity belonged to Ed L., and, in effect, added the proceeds of its sale to what the trustees were chargeable with. On appeal from this order, we held that this was an exercise of equitable powers which the probate court did not have,

and we remanded with direction to strike this item as being no part of the sum put in the hands of the trustees by the will of the testator, the father of Ed L. Clark. See *In re Estate of Clark,* 151 Iowa 511, 519-521.

On what theory it could well be claimed that this $3,200 should be charged to the trustees, we are at loss to understand, and think that, though this was done below, appellees may fairly be held to an anticipation that, if an appeal were taken, such charge to the trustees could not be sustained, and think that any attempt to charge the trustees with this sum was so clearly foredoomed to failure as that appellees should not be made an allowance for the services performed in this regard. · It seems, too, that services for others than Ed L. Clark are included in the allowance made to appellees.

2.

As we have said, we will not, as an abstract proposition, review this allowance *de novo.* Nor is it required that we do so here. A reversal must ensue without such review. The testimony on values, both that by affidavit

**4. TRUSTS:** management: allowance of attorney fees.

and counter affidavit, and that taken orally on the hearing, rests upon hypothetical questions, which include all of the services to which we have referred. It is impossible to say what value the witnesses would have testified to, had some or any of the items included in the hypothesis been eliminated therefrom. The testimony on value includes the services in said litigation, both in the trial court and this court, with reference to said item of $3,200. We then have testimony as to what certain services were worth, without any segregation as to items of service. By way of illustration, we know what the wit-

**5. EVIDENCE:** opinion: value: improper inclusion of facts.

nesses say three items of services were worth in the aggregate, but are not informed what is the value if some one of these items be

eliminated.   Testimony that a given thing is worth a certain sum if named things were done becomes no testimony if some of these things should not have been considered by the witness.   Where the witness says that it is worth $100 to do three things, and it becomes a question what two of them, with some particular third item eliminated, are worth, the witness has not testified upon that question at all.   He has said what three things are worth, but not what some two of them are.   It becomes not a review of the weight of evidence, but a finding that there is no evidence upon which the court below could proceed to judgment.

The cause must be reversed and remanded.   On the remand, the district court will proceed to take testimony on what the services here held to be for the benefit of the estate are reasonably worth, upon what other services, if any, thus beneficial have been rendered, and their reasonable value, and thereupon will make allowance in accordance with what it finds by such evidence is justly due.—*Reversed* and *Remanded.*

Deemer, Ladd and Gaynor, JJ., concur.


### Supplemental Opinion.


Salinger, J.—I.   The petitioner bases himself on two misapprehensions:  (1) That the case of *In re Estate of Clark,* 151 Iowa 511, is now open for consideration, as it would be if the petition for rehearing were addressed to that case; (2) that the opinion in the instant case holds that a claim for attorney fees is not sustained unless it is itemized and each item proved, as in the case of a grocery bill.   It may be that the abstract in the case published in 151 Iowa warrants the claim that that case was incorrectly decided.   But that question is foreclosed on this application for rehearing.

6. Appeal and Error: review: scope: petition for rehearing.

On it, we apply the case as it was decided, and do not look into its record. In our opinion we applied that decision correctly. We are not minded to recede from the opinion because of a claim that, while this is so, we should, now that the earlier case is first challenged on this rehearing addressed to this case, overrule the first case.

II.    There is nothing in the opinion to justify the claim that "appellees cannot recover unless they show the value of each separate and specific service rendered, comprising the whole. In other words, what it was worth to prepare the case, file the petitions, assemble the evidence, conduct the trial, etc., involved in this litigation extending over a period of more than four years; and that having established the value of each individual item of service the aggregate is to be arrived at by simple addition. And on the other hand, if they fail to connect up the claim by each successive link, they must fail on the whole."

7. EVIDENCE: opinion: value: improper inclusion of facts.

What the opinion does say, and clearly, is that, if testimony establishes what three items are worth in lump, and no recovery may be had as to one of them, there is no evidence of what any item of the three is worth by itself, and hence a total failure of proof; that, if a witness says three things together are worth a stated sum, and one of them may not be recovered for at all, the witness has not said what any one of the three is worth, separately.

There was testimony of what all items in a hypothetical question were together worth. Our holding is that, since the answer thereto does not separate the items, and some of the items may not be recovered for, there is no evidence of what any single item covered by such question and answer is worth.

The petition is overruled.

EVANS, C. J., LADD and GAYNOR, JJ., concur.