IN RE ESTATE OF WILLIAM TONE AND MATTIE M. TONE.

No. 47508.

(Reported in 39 N.W. 2d 401)

1316

OCTOBER 18, 1949.

J. M. Chamberlin and Waldo M. Wissler, both of Davenport, for appellant.

Ed. R. Brown and W. M. Carron, both of Des Moines, for appellee.

GARFIELD, J.—William and Mattie M. Tone, husband and wife, died early in 1943 leaving wills which create a spendthrift trust in favor of their foster daughter for life with remainder to the daughter's three children. The trust provisions of each will are identical and the Central National Bank & Trust Company of Des Moines is trustee under each. The daughter filed application to require the trustee to pay expenses and attorney fees incurred by her in litigation against her and her husband. Trial was had, the application denied and the applicant has appealed to us.

The wills provide the trustee shall pay the beneficiary or beneficiaries the net income from the trust and in Item IV(d) "direct that neither the income * * * nor the principal fund, shall be liable for the debts, present or future, of Loretta Tone Thiessen, Barbara * * *, Patricia * * * or William Thiessen, and said trust estate and the income therefrom shall not be subject to the right * * * of any creditor of said beneficiaries to * * * reach the same under any * * * proceeding * * *. And said beneficiaries shall not have any power to * * * dispose of, encumber or anticipate the income, or any installment thereof, or any share in the principal thereof, it being my will that no right of disposition of any such property shall vest in said beneficiaries until the same shall have been actually * * * paid over

to them * * *." Loretta Thiessen is now Loretta Darnell and Barbara, Patricia and William are her children.

This is the last paragraph of Item IV (d) of the wills which the daughter, Loretta, claims entitles her to the relief now applied for:

"If at any time or times, on account of serious illness or other unforeseen emergency, any beneficiary * * * shall, in the opinion of said Trustee, imperatively require the expenditure * * * of part of the accumulated * * * income or of the principal, said Trustee is hereby authorized to * * * expend for such purpose such an amount as in its discretion and judgment, it may think wise, prudent and necessary under the circumstances."

These are the matters giving rise to the application which Loretta contends create such an "unforeseen emergency": Late in 1946, the trustee purchased a home in Davenport for the daughter where she lived about thirteen months. She desired to go to Arizona for a time about March 1, 1948, and authorized a Mr. and Mrs. Vanderipe to stay in the house during her absence. The daughter returned from Arizona April 18 but Mrs. Vanderipe refused to surrender possession before June 1.

On the evening of Decoration Day, with the consent of Mrs. Vanderipe, Loretta and her then husband, William Darnell, and one Hashaw went to the house to get some clothing. Darnell and Vanderipe got into a fight, the police were called and Loretta, Darnell and Hashaw were placed in jail, charged by the Vanderipes with breaking and entering.

Loretta called Mr. Chamberlin, an attorney, borrowed some money, was released from custody and "got Mr. Darnell out." She later testifies she borrowed $550 to get them out of jail, from whom does not appear. Loretta was discharged from the criminal complaint upon preliminary hearing before a justice of the peace. She says she "went to J.P. court just once." Darnell was held to answer the criminal charge but was released on bond. At the hearing upon her application in the fall of 1948 (the exact time is not shown) Loretta testifies, "Think the criminal charge against my husband that time has been dropped, or is being dropped now."

On June 28, 1948, because of the fight on Decoration Day, Mr. and Mrs. Vanderipe brought a damage action against Darnell, Loretta and Hashaw which asked the tidy sum of $50,000. The damage suit was aided by attachment and Loretta "had to borrow another $130 for a bond premium to discharge the. attachment."

Defense of the damage action was entrusted to Mr. Chamberlin and Mr. Wissler, associates at least in this litigation. They filed answer and counterclaim therein. Basis for the counterclaim does not appear but perhaps it may be inferred to be a claim for malicious prosecution or upon the attachment bond under section 639.15, Code of 1946, or both. When this appeal was submitted to us on September 23, 1949, the damage action had not been brought on for trial and there is no evidence as to when if ever trial may be expected.

Mr. Wissler says the services of himself and Mr. Chamberlin in the above matters down to September 8, 1948, are worth $1300. Loretta paid them $70. What she did with the rest of the $550 borrowed by her does not appear. On August 9, 1948, Mr. Wissler wrote the trustee for an advance of at least $1000 and asked that it agree to pay them "whatever sum may be reasonable for work done hereafter." This letter states Loretta was then indebted to the attorneys for at least $1000 "and we would estimate this is about one third of the total work which needs to be done." Eight days later the trustee wrote the attorneys it was unwilling to accede to their request for funds.

This application was filed August 27, 1948, alleging applicant's predicament is an " 'unforeseen emergency' within the provisions of the will" and "it is an abuse of discretion by the trustee to refuse to pay applicant's attorney fees, costs and expenses."

The trust estate is of the approximate amount of $300,000. Prior to June 1944, more than $15,000 was advanced out of the corpus of the estate for inheritance and estate taxes chargeable to Loretta. By arrangement with her and her then attorney and pursuant to court order this amount was to be restored to the trust out of the income therefrom. Complete reimbursement for this advance will not be made until two years after the hearing upon the application herein. No question is raised and no pro-

nouncement is made upon this appeal as to the propriety of this use of part of the income but it is mentioned in explanation. of the status of the trust and Loretta's financial condition.

After this advance for taxes is restored much larger payments from the income can be made Loretta. Until such time, under the arrangement with her and her then attorney, only $50 a month is regularly paid her from the income, in addition to $1500 to $1800 federal income taxes annually assessed against her. Some other amounts have been paid for Loretta as for hospital and doctor bills and railroad fares to Arizona when her boy had meningitis, $436 for an oil burner, and an undisclosed amount for a daughter of Loretta to graduate from school. It was stated in argument the gross annual trust income is about $6000.

In addition to her monthly income of $50 from the trust, Loretta receives $290 a month from annuities left by her parents. Her husband is a railroad brakeman and gets $280 a month. One of Loretta's daughters works in a post office in Arizona. The other daughter is a telephone operator in Hawaii. Loretta has bought clothes for them and given them money. Her son attends the state school for deaf children. Loretta gives him an allowance of $2.50 (how frequently does not appear) and buys his clothes.

One of the preliminary findings in the order denying the application is, in substance, that the court would not be justified in concluding the testator did not intend the opinion of the trustee to be final as to whether an unforeseen emergency required the expenditure of accumulated income or principal. Appellant has construed this as a holding that the trustee's decision as to what is such an emergency is final and not reviewable by the court. So construed, the finding is erroneous. No such finding is contained in the trial court's Findings of Fact and Conclusions of Law which state, as does the order appealed from, no abuse of discretion by the trustee was shown that would justify interference by the court.

However, if error in the above finding be conceded, it is of no avail to appellant. If the order denying the application is right any error in the findings is deemed not prejudicial. In re Estate of Hale, 231 Iowa 1018, 1024, 2 N.W. 2d 775, 779,

and citations; Roth v. Headlee, 238 Iowa 1340, 1348, 29 N.W. 2d 923, 927. See also Creel v. Hammans, 232 Iowa 95, 5 N.W. 2d 169.

The exercise of discretion by the trustee is subject to review by the court and to correction in a proper case. Sections 604.4 and 633.32, Code of 1946; In re Estate of Roberts, 240 Iowa 160, 165, 35 N.W. 2d 756, 759, and citations; In re Trusteeship of Clark, 174 Iowa 449, 454, 455, 154 N.W. 759, 156 N.W. 353; Restatement of the Law, Trusts, section 187; 54 Am. Jur., Trusts, section 180.

It is apparent these wills confer upon the trustee a wide discretion as to when "serious illness or other unforeseen emergency * * * imperatively require the expenditure" of "such an amount as in its discretion and judgment, it may think wise, prudent and necessary * * *."

Restatement of the Law, Trusts, section 187, comment d, lists these relevant circumstances in determining whether there has been an abuse of discretion:

"(1) The extent of the discretion intended to be conferred upon the trustee by the terms of the trust; (2) the purposes of the trust; (3) the nature of the power; (4) the existence or non-existence * * * of an external standard by which the reasonableness of the trustee's conduct can be judged; (5) the motives of the trustee in exercising * * * the power; (6) the existence or non-existence of an interest in the trustee conflicting with that of the beneficiaries."

In Keating v. Keating, 182 Iowa 1056, 1068, 165 N.W. 74, 77, the only Iowa decision cited by appellant (although it does not involve a spendthrift trust), there was (to quote from the opinion) "strong temptation to the trustee to exercise that discretion in his own interest, and against the interest of the beneficiary of the trust." Nothing of this kind appears here.

Restatement of the Law, Trusts, section 187, comment e, says:

"If discretion is conferred upon the trustee * * * the court will not interfere unless the trustee * * * acts dishonestly, or with an improper * * * motive, or fails to use his judgment,

or acts beyond the bounds of a reasonable judgment. The mere fact that if the discretion had been conferred upon the court, the court would have exercised the power differently, is not a sufficient reason for interfering with the exercise of the power by the trustee."

Other authorities are much to the same effect. 54 Am. Jur., Trusts, section 181, states:

"The court * * * will not interfere with * * * the trustee's determination, in the absence of clear abuse * * *. It will not ordinarily substitute its discretion for that of the trustee, but upon a proper showing it may * * * interfere with such discretion * * * where the trustee * * * has acted unreasonably or arbitrarily or from improper motives."

In 65 C. J., Trusts, section 539, pages 678, 679, it is said: "* * * ordinarily the court will not * * * interfere with * * * the exercise of the discretionary powers conferred on him. However, the court will interfere * * * where there is shown bad faith on his part, fraud, a gross and arbitrary abuse of discretion, or a complete and arbitrary refusal to act in the premises."

In re Trusteeship of Clark, supra, 174 Iowa 449, 455, 154 N.W. 759, 760, 156 N.W. 353, says: "* * * the court * * * may not do so [control the administration of a trust] upon a mere difference of judgment between the court and the trustees * * * the court is not authorized to make allowances therefrom for any and all purposes that may be deemed by it to be a just and proper expenditure, though general equity might demand the payment; it may not arrogate to itself the legitimate discretion of the trustees so as, for instance, to order payment for clothing bought by the cestui which the court thinks a reasonable purchase, while the trustees hold to the contrary."

See also Meek v. Briggs, 87 Iowa 610, 621, 54 N.W. 456, 43 Am. St. Rep. 410. Annotations on control of a trustee's discretion as to turning over to the beneficiary the principal of the trust fund are found in 32 A. L. R. 441 and 143 A. L. R. 467.

We agree with the trial court that appellant has failed to show such abuse of discretion by the trustee as to justify inter-

ference. There is no indication of dishonesty, improper motive or failure to use judgment by the trustee. Nor are we warranted in holding the trustee's decision exceeded the bounds of reasonable judgment. That we may have granted the beneficiary's request if the discretion had been conferred upon us is insufficient basis, under the above authorities, for a reversal.

It is not shown the trustee has refused to pay over the income from the trust in accordance with the terms of the wills and the arrangement for monthly payments heretofore made with Loretta and her then attorney. The attempt here is to invade the corpus of the trust on the ground an unforeseen emergency imperatively requires the expenditure.

The substance of the various definitions of "emergency" here applicable is a sudden or unexpected happening which calls for immediate action. See 14 Words and Phrases, Perm. Ed., 299, 307; 29 C. J. S., Emergency, pages 760–762; Young v. Hendricks, 226 Iowa 211, 215, 283 N.W. 895; Burger v. Omaha & C. B. St. Ry. Co., 139 Iowa 645, 655, 117 N.W. 35, 130 Am. St. Rep. 343; Lyter v. Vestal, 355 Mo. 457, 196 S.W. 2d 769, 2 A. L. R. 2d 1375, 1381.

Insofar as Loretta's application grows out of the criminal charge against her and her husband, it would seem that if there ever was an emergency which imperatively required this expenditure, it ceased to exist before her attorneys appealed to the trustee for funds—certainly before the hearing in the trial court. This part of the application is really an attempt to subject a portion of the principal of the trust to a claim for services rendered the life beneficiary who is concededly a spendthrift.

The claim that pendency of the civil action is such an emergency as requires the trustee to pay for the attorneys' services therein, past and future, is less persuasive than such a contention would have seemed when the action was commenced fifteen months ago.

The only testimony as to the injuries the Vanderipes claim to have suffered for which the action was brought is this given by Loretta: "They claim he broke his upper plate and she was injured—well her feelings were hurt."

In determining whether it is shown the trustee clearly abused its discretion in deciding this expenditure was not im-

peratively required by an emergency, it is proper to consider that Loretta and her husband have a regular income of $620 per month after payment of federal income tax assessed to Loretta, she was able to borrow $550 when they were in jail and $130 when her property was attached, while their principal expenses are $135 per month for rent and $125 for food and meals.

Appellant's main argument is that if the Vanderipes recover judgment against her because of the fight between her husband and Vanderipe the rule prevailing in Iowa and most jurisdictions may in the future be changed to subject funds of a spendthrift trust to claims of tort creditors and "it would be foolhardy to allow a tort claim to go undefended." Appellant concedes "that so far as the present law of Iowa pertaining to contract creditors is concerned there was no reason to grant an application such as hers."

It is apparent that so far as trust funds are sought to pay for the attorneys' services in the criminal matter, merely a claim of contract creditors is involved and appellant's principal argument entitles her to no relief upon this part of her application. The argument as to the remainder of the application cannot be sustained.

Restatement of the Law, Trusts, section 152, says:

"(1) Except as stated in §§156 and 157, if by the terms of a trust the beneficiary is entitled to the income from the trust property for life or for a term of years and it is provided that his interest shall not be transferable by him and shall not be subject to the claims of his creditors, the restraint on the voluntary and involuntary transfer of his right to the income accruing during his life is valid.

"(2) A trust in which by the terms of the trust a valid restraint on the voluntary and involuntary transfer of the interest of the beneficiary is imposed is a spendthrift trust."

The exceptions contained in sections 156 and 157 of the Restatement entitle appellant to no relief here even if we were to recognize the exceptions. None of them includes claims of tort creditors.

Except that the above definition of a spendthrift trust in terms assumes the validity of the restraint on transfer of the beneficiary's interest, it is substantially the definition found in the authorities generally. See 54 Am. Jur., Trusts, section 148; 65 C. J., Trusts, section 308; annotations 119 A. L. R. 19, 21, 138 A. L. R. 1319; 4 Iowa L. Bull. 139, 140; 9 Iowa L. Bull. 305, 306; Jones v. Coon, 229 Iowa 756, 762, 295 N.W. 162, 165.

The term "spendthrift trust" has sometimes been loosely and inaccurately used to include also discretionary trusts in which the nature of the beneficiary's interest is such that he has nothing which could be transferred or subjected to his debts. See authorities last above, also Roorda v. Roorda, 230 Iowa 1103, 1106, 1107, 300 N.W. 294, 296; Brahmey v. Rollins, 87 N. H. 290, 179 A. 186, 119 A. L. R. 8, 16, and annotation 19, 20; Restatement of the Law, Trusts, section 155, comment a.

These wills by Item IV(d) quoted above create spendthrift trusts which are unquestionably valid at least as to the income payable to the life beneficiary. And she has no absolute right to any of the trust fund except the income. Any payment from the principal under the last paragraph of Item IV(d), which is here sought to be compelled, is at the discretion of the trustee. Such payment would not be subject to the claims of creditors if the wills contained no limitation upon alienation, amounting to a spendthrift trust, such as quoted above. This is because no interest vested in the beneficiary under the last paragraph of Item IV(d) until the trustee exercises its discretion and claims of the beneficiary's creditors can rise no higher than the rights of the latter.

In Meek v. Briggs, supra, 87 Iowa 610, 617, 54 N.W. 456, 458, 43 Am. St. Rep. 410, repeatedly followed in later decisions, we quote this with approval from Tobias v. Ketchum, 32 N. Y. 319, " * * * where property is given to trustees to be applied, in their discretion, to the use of a third person, no interest goes to the third person until the trustees have exercised this discretion.' "

In Standard Chemical Co. v. Weed, 226 Iowa 882, 884, 285 N.W. 175, we say:

"If, under the terms of a trust, the income is to be applied to the cestui que trust in the discretion of the trustee * * * or in general, where there is no debt due from the trustee to the cestui * * * the beneficiary may enjoy his benefaction free from the appropriation of his creditors because he has received no vested or alienable right."

Among numerous other authorities in support of the above views are Robertson v. Schard, 142 Iowa 500, 504, 119 N.W. 529, 134 Am. St. Rep. 430; Kiffner v. Kiffner, 185 Iowa 1064, 171 N.W. 590; Damhoff v. Shambaugh, 200 Iowa 1155, 1158, 206 N.W. 248; Jones v. Coon, supra, 229 Iowa 756, 761, 762, 295 N.W. 162, 165; Roorda v. Roorda, supra, 230 Iowa 1103, 300 N.W. 294 (where we declined to subject property of a discretionary trust to a judgment against the beneficiary for child support although Restatement of the Law, Trusts, section 157, says such a claim is enforceable against the beneficiary's interest in a spendthrift trust); 54 Am. Jur., Trusts, section 162; 65 C. J., Trusts, section 308, pages 557, 558.

Appellant's principal argument that claims of tort creditors of the beneficiary may in the future be enforceable against spendthrift trusts is based on criticism of such trusts by certain writers. But this criticism does not extend to such discretionary trust provisions as the last paragraph of Item IV(d) upon which appellant here relies. These, so far as we are advised, are uniformly upheld even in the few jurisdictions that do not recognize spendthrift trusts.

We are cited to the article by Professor Horack in 4 Iowa L. Bull. 139 as critical of spendthrift trusts. The article makes plain that such criticism is of spendthrift trusts substantially as defined in the Restatement and does not apply to discretionary trusts. At page 157 the writer states: "Such trusts as those described in Keating v. Keating [182 Iowa 1056, 165 N.W. 74] are everywhere considered valid, and are clearly to be distinguished from spendthrift trusts properly so called * * *." The Keating trust was discretionary.

Discretionary trusts are sometimes called trusts to apply. Note 9 Iowa L. Bull. 305, 306, 308, says: "Trusts to apply have been very generally upheld. * * * a trust to apply * * * is

supported even by the jurisdictions which have absolutely refused to sustain the spendthrift trust properly so called."

54 Am. Jur., Trusts, section 162, states:

"A trust protective against * * * creditors of a beneficiary by virtue of a provision vesting discretion in the trustee to determine the time, amount, or manner of payments to a beneficiary generally is recognized to be valid. The protection of such a trust results from the nature of the beneficiary's interest, and not from any restraint on alienation."

Restatement of the Law, Trusts, section 155(1), reads:

"Except as stated in §156, if by the terms of a trust it is provided that the trustee shall pay to or apply for a beneficiary only so much of the income and principal or either as the trustee in his uncontrolled discretion shall see fit to pay or apply, a transferee or creditor of the beneficiary cannot compel the trustee to pay any part of the income or principal."

Section 156 refers to trusts for the trustor's own benefit and has no application here. Comment a under section 155(1) states:

"A trust containing such a provision as is stated in this Section is a 'discretionary trust' and is to be distinguished from a spendthrift trust, and from a trust for support. In a discretionary trust it is the nature of the beneficiary's interest rather than a provision forbidding alienation which prevents the transfer of the beneficiary's interest. The rule stated in this Section is not dependent upon a prohibition of alienation by the settlor; but the transferee or creditor cannot compel the trustee to pay anything to him because the beneficiary could not compel payment to himself or application for his own benefit."

In Jones v. Coon, supra, 229 Iowa 756, 762, 295 N.W. 162, 165, we say:

"Some writers have criticized decisions approving spendthrift trusts, but their objections are largely limited to such trusts as strictly or narrowly defined, viz.: Those in which certain interests in property are given to a beneficiary of a

trust which property he is entitled to enjoy unconditionally but which by the terms of the trust cannot be reached by his creditors or assigned or disposed of by the beneficiary."

The order appealed from is—Affirmed.

BLISS, OLIVER, HALE, WENNERSTRUM, SMITH, and MANTZ, JJ., concur.