In the Matter of the Albert B. CLEMENT and Vera V. Clement TRUST (Clement Charitable Trust).

Mitchellville Community Center, Inc., Appellant,

v.

Paul E. Vos and Estellean Baldwin, Co-Trustees of the Clement Charitable Trust, Appellees.

No. 01–2035.

Supreme Court of Iowa.

April 7, 2004.

Robert C. Oberbillig, Des Moines, for appellant.

Frank Murray Smith of Frank M. Smith Law Office, Des Moines, for appellees.

TERNUS, Justice.

This appeal arises from the decision of the trustees of a charitable trust to deny funding for the construction of a community center in Mitchellville, Iowa. The non-profit corporation building the community center claimed in this proceeding that the trustees acted unreasonably in revoking its offer of funding and in proceeding with efforts to construct a competing senior citizen center in Mitchellville. The district court ruled the trustees acted reasonably in refusing to contribute trust funds to the community center, but concluded the trustees' action in using trust monies for construction of a senior citizen center in the same community was neither reasonable nor prudent. Both parties appeal. We affirm in part and vacate in part.

I. *Background Facts and Proceedings.*

Upon the death of Albert Clement in 1982, and pursuant to his will, the Albert B. Clement and Vera V. Clement Trust was created for the following purpose:

To sponsor programs and activities, that will be able to serve the Senior Citizens of the Northeastern portion of Polk County, and the Northwestern portion of Jasper County, and including but not limited to, the towns of Maxwell, Farrar, Santiago, Valeria, Ira, Mingo, Colfax, and Mitchellville.

According to the terms of the will, this trust was to be "managed and controlled" by the appellees, Paul E. Vos (Clement's attorney) and Estellean Baldwin (Clement's niece by marriage), as co-trustees.

During the first ten years of the trust, the trustees were required to manage the real estate and other property in the trust, using any excess income for the designated charitable purpose. Thereafter, they were allowed to "sell and convert into cash" the trust assets. Ten years after Clement's death, the trustees were also "authorized and directed" to form a non-profit corporation that would be managed by the trustees and a three to five member advisory board to be appointed by the trustees.

In 1993, the trustees filed an application with the court asking whether the trust's farm ground should be sold, whether a corporation should be formed to manage the trust's affairs, and whether an advisory council should be appointed. The district court determined the farm was a good investment with a favorable rate of return and declined to order its sale. The court also found no reason to establish a corporation that would simply continue to operate the trust on the same basis as it had been managed the past ten years. The district court did not specifically address the trustees' request concerning an advisory board.

In addition to managing the trust assets, the trustees sought to implement the testator's charitable intent. Lacking express guidance in the will as to what programs and activities would serve the senior citizens in the identified geographical area, the trustees decided to contribute to community centers that housed a senior citizen center. In addition to funding the ongoing operation of the senior citizen centers, the trust contributed to the construction of buildings for such centers. They developed five basic requirements to guide their decisions. These were: (1) the plans for the senior citizen center must be approved by the trustees and the site adapted to assure maximum use for senior citizens; (2) the senior space must be named after Albert and Vera Clement; (3) the community must raise matching funds in an amount to be determined by the trustees; (4) the center must be available to senior citizens at no cost; and (5) the building

must be owned by the community involved or by a tax-exempt organization so as not to jeopardize the trust's non-profit, tax-exempt status. Between 1985 and 1991, the trust contributed to the construction of three community centers, one in Mingo, one in Bondurant, and one in Maxwell.

In 1994, a community group from Mitchellville submitted a proposal to the trustees, requesting funding for a new community building that would include a senior citizen center. Vos informed Mitchellville's city manager of the requirements of the trustees for approval of the request, including that the trust "would need to be heavily involved in the planning of the building." Vos later reviewed a proposed plan for the center and thereafter informed the community group that the trust would not commit any funds until certain specified changes were made.

In April 1995 a group of Mitchellville citizens incorporated the appellant, Mitchellville Community Center, Inc. (MCCI). According to its articles of incorporation, MCCI was organized to raise funds for a new community center, to own the land and building housing the center, and to manage the center. In May, Vos provided MCCI's building committee with revised drawings prepared by the community group's architect in collaboration with the trustees, together with explanations for the proposed changes. The committee agreed to most of the trustees' suggestions except their desire to move the entrances to the building so as to more conveniently accommodate senior citizens.

On June 16, 1995, the trust notified MCCI of its terms for contributing to the community center. After noting the trustees' objection to the location of the entrances and a few other minor details, the trust offered to contribute $50,000, provided the community raised $100,000 by August 31, 1995. The matching contributions were to come from private individuals and not from any taxing authority. In addition, the offer was contingent on (1) the building being owned by the city or a non-profit corporation, and (2) the building being available to senior citizens throughout the day at no charge.

On August 21, 1995, the MCCI board of directors voted to proceed with the original building plan, but did not communicate this decision to the trustees. The trustees continued to operate under the belief that the community center was to be built with the changes approved by the building committee.

Meanwhile, on September 6, 1995, the trust revoked its offer to contribute to the building project because MCCI had failed to raise the required contributions and had not received IRS approval of its non-profit status by the end of August 1995. MCCI was told, however, that it could reapply for financial assistance. Notwithstanding this funding problem, MCCI proceeded with construction of the community center. Periodically MCCI wrote to the trustees, stating that it had now met the conditions imposed by the trustees and asking the trust to make the promised $50,000 contribution. Vos responded to the first such letter, stating again that the offer had been withdrawn when the conditions were not met by the deadline. The trustees did not reply to the other requests until March 13, 1997, when Vos notified MCCI that the trust planned to construct its own senior citizen center in Mitchellville. Vos also expressed the trustees' dissatisfaction with MCCI's decision to reject their suggested changes to the building plans, which he had discovered in a construction site visit, stating the trust's contribution had always been contingent on those changes being implemented. In November 1997 the trust purchased a former grocery store in Mitchellville and announced to the general

public its plans to remodel the building into a senior citizen center.

After an unsuccessful attempt to have the attorney general challenge the trust's actions, MCCI filed a petition against the trustees, alleging they had unreasonably exercised their discretionary powers. MCCI specifically complained about Vos's attempts to micro-manage the plans for the community center "well beyond the reasonable activities of a trustee," and the trust's subsequent refusal to contribute funds when MCCI did not make "all the minute changes requested by Vos." In addition, MCCI criticized the trustees for making plans to build a senior citizen center in the same block as the community center, which was already serving the town's elderly population. MCCI asked the court (1) to enjoin further trust expenditures absent court order; (2) to determine the trustees acted unreasonably and contrary to the terms of the trust; (3) to rule that the trust should have provided funding for the community center; (4) to require formation of the non-profit corporation as provided in the will; and (5) to consider removing Vos as a trustee.

After the trustees' motion to dismiss based on MCCI's alleged lack of standing was denied, the matter proceeded to trial. The court held the trustees had not strayed from the requirements of the will and the conditions imposed on MCCI's funding request were not unreasonable. The court did, however, conclude the trustees abused their discretion when they expended monies to construct a separate senior citizen center in Mitchellville. Determining there was no showing that two centers were needed, the court directed the trustees to sell the Mitchellville property and apply the proceeds to existing senior citizen centers in the geographical area, or to the creation of new centers in the specified area.

With respect to Vos's continuation as a trustee, the court acknowledged that he may have been over-zealous in carrying out the purposes of the trust, but decided his removal was not warranted. Finally, the court determined the will did not require the trust to sell its real estate and form a non-profit corporation. Nonetheless, the court concluded an advisory committee should be created.

## II. *Issues on Appeal.*

MCCI raises four issues in its appeal: (1) the trial court erred in finding the trustees acted reasonably with respect to MCCI's request for funding; (2) the court erred in failing to remove Vos as a trustee; (3) the court should have removed Baldwin as a trustee because she delegated her responsibilities to Vos; and (4) the trial court should supervise the selection of an advisory board. The trustees filed a cross-appeal. They assert MCCI had no standing to challenge their actions. In addition, they contend the court should have found that MCCI's claim based on the trust's denial of funding was barred by the statute of limitations. Finally, the trust argues the court erred in ruling the trustees had abused their discretion in planning a second senior citizen center in Mitchellville.

We will first consider the issue of standing, as it affects whether MCCI may properly maintain this suit. Because we conclude it only has standing to challenge the trustees' refusal to provide funding after they had promised to do so, we also address whether the trustees acted properly in their decision to withdraw the trust's financial support of the community center. Our resolution of these issues prevents the court from reaching the other issues raised on appeal or renders them moot.

III. *Scope of Review.*

An action for breach of a trustee's duties is equitable in nature. *See* Iowa Code § 633.4501(2) (2001); *Carstens v. Cent. Nat'l Bank & Trust Co.*, 461 N.W.2d 331, 333 (Iowa 1990) ("Generally, the remedies of a beneficiary against the trustee are exclusively equitable."). Therefore, our review of the court's rulings on these issues is de novo. *See* Iowa R. Civ. P. 6.4.

IV. *Standing.*

■ In a pretrial motion to dismiss, the trustees asserted that MCCI did not have a "special interest in the trust" within the meaning of Iowa Code section 633.5104 so as to have standing to bring suit against the trustees. The trial court overruled this motion, concluding MCCI was a proper party to bring this action "on behalf of the senior citizens of the Mitchellville area." On appeal, we think MCCI had standing only to assert its claim that the trustees acted unreasonably in revoking their offer to contribute trust funds to construction of the Mitchellville community center. We hold the plaintiff did not have standing to protect the interests of senior citizens in the general administration of the trust.

We start our analysis with the Iowa Trust Code provision governing judicial intervention in the operation of trusts: "The administration of trusts shall proceed expeditiously and free of judicial intervention, except to the extent the jurisdiction of the court is invoked *by interested parties* or otherwise exercised as provided by law." Iowa Code § 633.6201 (emphasis added). "The settlor, the trustee, the attorney general, and any charitable entity or *other person with a special interest in* the trust shall be interested persons in a proceeding involving a charitable trust." *Id.* § 633.5104 (emphasis added); *accord In re Trust of Rothrock*, 452 N.W.2d 403, 405 (Iowa 1990); Restatement (Second) of Trusts § 391 cmt. *d*, at 280 (1959) ("A suit for the enforcement of a charitable trust cannot be maintained by persons who have no special interest in the enforcement of the trust.").

■ "A charitable trust is one in which property is devoted to purposes beneficial to the community." *Amundson v. Kletzing–McLaughlin Mem'l Found. College*, 247 Iowa 91, 94, 73 N.W.2d 114, 116 (1955); *see* Iowa Code § 633.5101 (identifying charitable purposes, including "the accomplishment of [a purpose] which is beneficial to the community"). The Clement Charitable Trust is a charitable trust within the meaning of the Iowa Trust Code because the trust was created for the support of programs and activities for senior citizens in the specified geographical area, a purpose beneficial to the communities in this locale. *See* Restatement (Third) of Trusts § 28 cmt. *l*, at 22 (2003) (stating the expansion of social and recreational opportunities for members of a community is a charitable purpose). Thus, to decide whether MCCI has standing to invoke the jurisdiction of the court, we must determine whether MCCI has a "special interest in the trust." *See* Iowa Code § 633.5104.

In giving meaning to this statutory phrase, we keep in mind that the Iowa Trust Code is supplemented by the common law of trusts, "[e]xcept to the extent that [the trust code] modifies the common law governing trusts."[1] *Id.* § 633.1104.

---

1. Although the Iowa Trust Code was adopted in 1999 with an effective date of 2000, *see* 1999 Iowa Acts ch. 125, § 109, it applies to all trusts whether or not created prior to enactment of the new trust provisions. *See* Iowa Code § 633.1106(1). Moreover, the Iowa Trust Code applies to all proceedings concerning trusts commenced on or after July

From our review of section 633.5104, the provision identifying those persons who may invoke the jurisdiction of the court, we conclude the only obvious change made in the common law was the addition of the settlor of the trust as an interested party. *See* Martin D. Begleiter, *In the Code We Trust—Some Trust Law for Iowa at Last,* 49 Drake L.Rev. 165, 292 (2001). Therefore, we look to our prior case law in deciding whether MCCI had a special interest that would allow it to maintain this suit.

██ It is well established that persons are not entitled to sue if their only benefit from enforcement of the trust is that shared by other members of the public. *Amundson,* 247 Iowa at 95, 73 N.W.2d at 117; *accord* Restatement (Second) § 391, cmt. *d*, at 280. The community's interest in the enforcement of a charitable trust must be vindicated by the attorney general. *In re Estate of Ditz,* 254 Iowa 444, 453–54, 117 N.W.2d 825, 830 (1962); *Amundson,* 247 Iowa at 96, 73 N.W.2d at 117. *See generally* Iowa Code § 633.5104 (stating attorney general is an "interested person[ ] in a proceeding involving a charitable trust"). This restriction is imposed to prevent frequent and disruptive litigation against charitable trusts. As the Missouri Supreme Court has noted,

> The persons affected by such trusts are usually some or all of the members of a large and shifting class of the public. If any member of this class who deemed himself qualified might begin suit, the trustee would frequently be subjected to unreasonable and vexatious litigation.... Obviously, there is good reason for vesting in a single authority the discretion and power incident to the enforcement of such trusts, rather than in leaving the matter to the numerous,

changing, and uncertain members of the group directly to be aided.

*State ex rel. Nixon v. Hutcherson,* 96 S.W.3d 81, 84 (Mo.2003).

██ For the same reason, "[t]he mere fact that a person is a *possible* beneficiary is not sufficient to entitle him to maintain a suit for the enforcement of a charitable trust." Restatement (Second) § 391, cmt. *c*, at 279 (emphasis added); *accord Warren v. Bd. of Regents,* 247 Ga.App. 758, 544 S.E.2d 190, 193 (2001) (stating "those who can enjoy the status of beneficiaries *only when selected by the trustees* are generally held to have no right to initiate a suit for the enforcement of a charitable trust"). Thus, "individuals must show that they have a special or definite interest in the trust or are entitled to receive a benefit." *Forest Guardians v. Powell,* 130 N.M. 368, 24 P.3d 803, 809 (N.M.Ct.App.2001). As one court has observed, "the necessary indefiniteness of charitable trust beneficiaries will leave few situations in which courts will hold that individuals have sufficient interest to have standing to sue for enforcement." *Kania v. Chatham,* 297 N.C. 290, 254 S.E.2d 528, 530 (1979). Our research bears out this observation.

For example, a Delaware court held that adjoining landowners who objected to the proposed use of a trust's real estate lacked standing, the court noting "plaintiffs are clearly not of that special class of trust beneficiaries who have standing to sue for their own special interest." *Pollock v. Peterson,* 271 A.2d 45, 49 (Del.Ch.1970). In *Warren,* faculty members who objected to the university's selection of a person to assume an endowed chair were denied standing, the court rejecting the idea that they could enforce the "charitable trust by virtue of their positions as faculty members arguably eligible to be selected ... to

1, 2000. *Id.* § 633.1106(2). The petition in this case was filed on May 1, 2001.

hold the [endowed chair]." 544 S.E.2d at 194. As a final example, the North Carolina Supreme Court refused to allow an unsuccessful candidate for a scholarship to sue the trustees of the charitable trust funding the scholarship, even though the plaintiff had made the initial cut to qualify for the award. *Kania*, 254 S.E.2d at 530. We highlight these cases simply to illustrate the difficulty in showing a special interest sufficient to support standing to sue a charitable trust.

In applying the special-interest requirement to the present case, we recognize that "[t]he meaning [of 'interested person'"] as it relates to particular persons may vary from time to time according to the particular purpose of, and matters involved in, any proceeding." Iowa Code § 633.1102(9); *accord Associated Students of the Univ. of Or. v. Or. Inv. Council*, 82 Or.App. 145, 728 P.2d 30, 33 (1986) (concluding that although plaintiffs had "a particular interest in the allotment of scholarships" from a charitable endowment, the allegations of their suit did "not relate to that interest" and so they had no standing); *Lopez v. Medford Cmty. Ctr., Inc.*, 384 Mass. 163, 424 N.E.2d 229, 232–33 (1981) (finding standing as to some claims, but not as to others). Thus, in evaluating MCCI's standing, we must consider the matters at issue in this action and whether MCCI has a special interest with respect to each of these matters.

MCCI made several claims and sought various types of relief in its suit against the trustees. It claimed the trustees acted unreasonably in refusing to donate trust funds to the construction of the Mitchellville community center and in attempting to control the details of construction. MCCI asked the court to construe the terms of the trust and order the trustees to fund MCCI's center. MCCI also asked the trial court to order the formation of a non-profit corporation as suggested in the will, to remove Vos as a trustee, and to prohibit the trust's construction of another senior citizen center in Mitchellville. Although we think MCCI had a special interest in the trustees' decision to revoke their offer to contribute to the Mitchellville community center, we do not believe MCCI has an interest beyond that of the general public and other potential beneficiaries in the general administration of the trust.

Our conclusion that MCCI has some standing rests not on its purported ability to represent the senior citizens of Mitchellville, but rather arises from the trustees' formal decision to contribute trust funds to MCCI's building project. As a consequence of this commitment, notwithstanding that it was subject to conditions, MCCI became more than a possible beneficiary of the trust; it acquired a special interest in seeing that the trustees lived up to their promise. Thus, MCCI has standing to vindicate this interest, and only this interest, in this lawsuit.

In view of this conclusion, we agree with the district court's denial of the trust's motion to dismiss to the extent it permitted MCCI to pursue a claim against the trustees for revoking the trust's funding of the community center. We disagree with that part of the trial court's ruling on the trust's motion recognizing standing by MCCI to challenge the general administration of the trust, including MCCI's challenge to the trustees' decision to build a senior citizen center in Mitchellville and to the trustees' failure to set up a non-profit corporation and advisory board, as well as MCCI's request that Vos be removed as trustee. These are matters that affect the public in general as much if not more than they affect MCCI and, therefore, MCCI is not entitled to sue for enforcement of the trust with respect to these issues. Based on MCCI's lack of standing, we must va-

cate the district court's final judgment to the extent it ruled upon and granted relief based upon these claims. Because we express no opinion on the merits of these questions, our decision does not preclude the probate court from addressing these issues in another context should these matters come before the court again.

## V. *Trustees' Revocation of Funding Offer.*

■ We turn now to MCCI's claim that the trustees acted unreasonably in revoking the funding it offered to MCCI. MCCI identifies two particular ways in which it claims the trustees were unreasonable: (1) in insisting that their personal preferences with respect to the building plan had to be followed if MCCI was to receive funds from the trust; and (2) in setting a timetable of conditions unlike those that had been required of other communities, knowing the timetable could not be met.

■ Because the will setting up this charitable trust identified the beneficiaries of the trust quite broadly, the trustees had the discretion to select the specific beneficiaries. Iowa Code § 633.5101 ("If the terms of the trust do not indicate a particular charitable purpose or beneficiaries, the trustee may select one or more charitable purposes or beneficiaries."); *see In re Estate of Ditz*, 254 Iowa at 450–52, 117 N.W.2d at 828–30 (finding trust did not fail for lack of specific beneficiaries since testator could rely on trustees to use their good judgment in choosing beneficiaries). When a trustee has discretionary power, the trustee must use that power "within the bounds of reasonable judgment and in accordance with applicable fiduciary principles and the terms of the trust." Iowa Code § 633.4214(1). "Absent an abuse of discretion, a trustee's exercise of discretion is not subject to control by a court." *Id.* § 633.4214(2); *accord Arnette v. Watson*,

203 Iowa 552, 554, 213 N.W. 270, 271 (1927). Thus, we will not interfere with the administration of a trust based simply on a difference in judgment with respect to what should be done and who in particular should benefit from the trust. *In re Clark*, 174 Iowa 449, 455, 154 N.W. 759, 760 (1915); Restatement (Second) § 187 cmt. *e*, at 403.

■ In determining whether a trustee has abused his or her discretion in exercising or failing to exercise a power, we consider (1) the intended breadth of the trustee's discretion under the trust instrument; (2) the purpose of the trust; (3) the nature of the power at issue; (4) "the existence ... of an external standard by which the reasonableness of the trustee's conduct can be judged" and the definiteness of that standard; (5) "the motives of the trustee in exercising or refraining from exercising the power"; and (6) whether the trustee has an interest in conflict with the beneficiaries' interest. *In re Estate of Manahan*, 255 Iowa 1060, 1066, 125 N.W.2d 135, 138 (1963); *accord In re Tone's Estate*, 240 Iowa 1315, 1321, 39 N.W.2d 401, 405 (1949); Restatement (Second) § 187, cmt. *d*, at 403. When we apply these considerations, we conclude, as did the district court, that the trustees did not act unreasonably and did not abuse their discretion.

We first note that the testator gave the trustees broad discretion in determining what "activities and programs" would benefit the elderly in the designated geographical areas. The breadth of this discretion is magnified by the lack of any external, definite standard. Thus, it fell upon the trustees to impose conditions on any funding that would ensure the needs of senior citizens were in fact being addressed and met by the entities receiving trust monies. Many of the efforts viewed by MCCI as micro-managing by Vos were actually attempts by Vos to make certain that funds were not obtained under the

promise that a senior citizen center would be established when in reality the recipient intended to use the contribution to build a community center that would be available to elderly citizens on the same basis as any other members of the community. It appears Vos wanted to make sure senior citizens had a designated and identifiable space where they would feel comfortable and welcome. He also tried to ensure that conveniences seniors would need while at the center were available and easily accessible. These goals were consistent with the testator's intent to promote programs and activities for senior citizens. Therefore, while Vos may have been over-zealous in this regard, as the trial court observed, we agree that he was not unreasonable.

MCCI complains that the conditions and timetable imposed on it were more onerous than those imposed on other communities receiving contributions from the Clement Charitable Trust. It is true that the trustees handled each situation somewhat differently, but not entirely so. As noted earlier the trustees developed five guidelines for funding projects that they applied to all applicants. While not all communities were given a deadline within which to comply with the conditions imposed by the trustees, funding for a community center in the town of Mingo was also contingent on the community's ability to raise funds within a certain time period. Importantly, there is no cause to believe that the trustees had anything at heart in imposing conditions on their offer to MCCI other than their perception of the testator's wishes and the special needs of the senior citizens who were to benefit from the trust's expenditures.

Like the trial court, we conclude the trustees did not abuse their considerable discretion in requiring MCCI to meet the trust's conditions in order to receive funding for its community center, including the imposition of a timetable for the accomplishment of those conditions. Nor did the trustees abuse their discretion in refusing to make a contribution when these conditions were not timely satisfied. The trustees clearly informed MCCI that it could reapply for a grant despite its initial inability to meet the requirements imposed by the trustees. The communications between the parties thereafter reveal that the stumbling block for funding was MCCI's refusal to alter its building to accommodate the concerns of the trustees, a condition we have found not to be an abuse of the trustees' discretion. Therefore, MCCI's failure to meet the original deadline set by the trustees was, in the end, not the cause of its inability to obtain monies from the Clement Charitable Trust.

## VI. *Summary.*

We affirm the trial court's judgment that the trustees did not act "in an unreasonable or imprudent manner rising to the level of abuse of discretion in failing to make a grant to the Mitchellville Community Center Inc. in 1995 or 1996." Because MCCI had no standing beyond its interest in obtaining the promised funding, we must vacate the remainder of the trial court's judgment.

**AFFIRMED IN PART ON APPEAL AND VACATED IN PART ON CROSS-APPEAL.**

All justices concur except WIGGINS, J., who takes no part.