IN RE ESTATE OF MARY M. ROBERTS and the TRUSTEESHIP OF ORVILLE J. ROBERTS.

No. 47383.

(Reported in 35 N. W. 2d 756)

FEBRUARY 8, 1949.

Abramson & Myers, of Des Moines, and Downey, Morris & Abrams, of Kansas City, Missouri, for appellant.

Hammer & Mathias, of Newton, for Guy L. Roberts, appellee.

OLIVER, J.—Guy L. Roberts, the trustee, is a cousin to Orville J. Roberts, the beneficiary. Guy is a lawyer. The will of Mary M. Roberts, made in 1936, gave her estate to her daughter, Clara Zang, and her son, Orville, absolutely. December 8, 1944, testatrix executed a codicil which modified the will as follows:

"2. It is my will that the name of Orville J. Roberts be entirely eliminated from my will as a Legatee, and that the name of Guy L. Roberts, as Trustee, be substituted in lieu thereof, who shall hereinafter be referred to as 'trustee'.

"The said Trustee is to receive and manage all property, funds, and affairs in this Trust, with power to invest and reinvest the funds in such securities as in his discretion seems right and proper; to collect rents, issues and profits on such investments as they become due; and to accumulate the income and add to it to the corpus of the Trust; to pay all taxes and other expenses rightfully chargeable against said trust; to sue

and be sued in the name of the trustee; and to perform any and all other acts necessary for the proper handling of said Trust.

"The Trustee may disburse all or any portion of the corpus of the Trust at any time or from time to time as in his discretion seems proper. Any amount distributed during the lifetime of my son, Orville J. Roberts, shall be for his use and benefit.

"The right of my son, Orville J. Roberts, to receive such income and principal shall not be anticipated, or assignable, or in any way applicable to the payment of his debts.

"The funds, if any, remaining in said Trust not otherwise distributed to my son, Orville J. Roberts, shall at his death, immediately vest in Margaret Clingan, and Lois Cox, my grand-daughters."

Testatrix died in 1945. Distribution of her estate was made in July 1947. The trustee received Orville's portion, apparently about $5500. In December 1947, Orville made the application to terminate the trust. His daughters Margaret Clingan and Lois Cox, remaindermen in the trust estate, joined him in the application.

The application states: "the sole intention of the testatrix in creating said trust was to protect said property and assets from an invasion by [Vera] the then wife of the applicant"; in September 1944, Vera, with whom he was having marital difficulties "was threatening to strip him of his assets" including any anticipated inheritance from his mother; he consulted Guy L. Roberts and at Guy's suggestion and dictation requested his mother in writing to will his share of her estate in trust; pursuant thereto Guy thereafter prepared the codicil which testatrix executed December 8, 1944; subsequently Vera and Orville were divorced and their property rights fully settled; that this fully accomplished the purpose of the trust and it should be terminated.

Orville testified he told Guy of Vera's threats and Guy said testatrix' will could be changed so Vera "can't touch it", and Orville then wrote a letter to testatrix dictated by Guy and to be presented by Guy to testatrix. Guy testified testatrix had frequently discussed with him the matter of placing in trust

Orville's portion of her estate, and when Orville consulted him he told Orville a program could be worked out if Orville would request testatrix to set up a trust for Orville's interest in the estate; that accordingly the letter was written to testatrix and the codicil was thereafter prepared by Guy "in accordance with her dictates" and was executed by testatrix; that "It was made to protect the property against Orville's own weaknesses. The threat that Vera made to take the property was only one element."

Clara Zang testified her mother said Orville had told her "that they were going to get a divorce" and had written her (testatrix) "he wanted her to fix his money to be secure for him" and that Guy had the letter. Over objections, on which rulings were reserved (the cause was tried in equity), Orville testified testatrix told him Guy had drawn a trust provision in her will and she had signed it, and that "my money was safe." "I understood that at any time I wanted the money it would be presented to me, all or any part of it. That is the understanding I had with my mother."

Orville was divorced from Vera in May 1945. Although testatrix lived until November 29, 1945, she did not revoke or modify the trust provision of the codicil.

I. This is a protective trust in the nature of a spendthrift trust. Technically it is termed a discretionary trust because any and all payments to the beneficiary are discretionary with the trustee. Restatement of the Law, Trusts, section 155; 54 Am. Jur., Trusts, section 162; Roorda v. Roorda, 230 Iowa 1103, 300 N. W. 294. Courts will not dissolve such trusts before the expiration of the term for which created, save in exceptional cases. Olsen v. Youngerman, 136 Iowa 404, 412, 113 N. W. 938.

Counsel for Orville contend the only purpose of the trust was protection from Vera. They argue testatrix knew of Orville's difficulties with Vera and Vera's threats and they rely upon testimony of statements or declarations by testatrix of her purpose and of her understanding as to the effect of the trust provision. In construing a testamentary trust the rules governing the construction of wills are to be applied. McClintock v. Smith, 238 Iowa 964, 967, 29 N. W. 2d 248. "Under these

rules evidence of extrinsic circumstances is admissible, but ordinarily direct statements by the testator of his intention are not admissible." Restatement of the Law, Trusts, section 4(c). Nor is extrinsic evidence admissible to vary, contradict or add to the terms of a will, or to show an intention of the testator different from that disclosed by the language of the will. 57 Am. Jur., Wills, section 1040. In re Will of Tinsley, 187 Iowa 23, 174 N. W. 4, 11 A. L. R. 826; Moran v. Moran, 104 Iowa 216, 73 N. W. 617, 39 L. R. A. 204, 65 Am. St. Rep. 443. Evidence to show the testatorial intention as an independent fact divorced from the words of the will is clearly inadmissible. 57 Am. Jur., Wills, section 1109. As stated in Scott v. Scott, 137 Iowa 239, 242, 114 N. W. 881, 882, 23 L. R. A., N. S., 716, 126 Am. St. Rep. 277, "There being no ambiguity in the language employed, parol proof of the declarations of the deceased as to his purpose was rightly excluded." 57 Am. Jur., Wills, section 1112.

The codicil contains no ambiguity, latent or patent. It is clear testatrix' purpose was to protect Orville. His life is fixed as the term of the trust. It does not refer to Vera. The addition of a provision that the existence of the trust should depend upon her status would vary and contradict the provisions of the codicil. Courts will not redraft wills from oral testimony. In re' Estate of Lepley, 235 Iowa 664, 17 N. W. 2d 526; In re Estate of Heckmann, 228 Iowa 967, 975, 291 N. W. 465. We hold the trial court properly refused to terminate the trust. We need not consider whether, under the dead man statute, Orville was competent to testify to conversations with testatrix.

The will in In re Estate of Cornils, 167 Iowa 196, 198, 201, 149 N. W. 65, 66, L. R. A. 1915E 762, cited by counsel for Orville, provided the trust for testator's daughter, Lizzie, should exist " 'during the life of her husband, Andrew Jacobs.' " It was clear from the language of Cornils' will that the purpose of the trust was to protect the wife's estate against her husband. His divorce would accomplish this purpose as effectively as his death. The extrinsic circumstances there shown were merely aids in interpreting that language of the will and did not vary, contradict or add to it.

The record in the Cornils case shows a doctor testified: "I heard various conversations between the husband and wife as to the general fact that they were going to make a will that would protect Lizzie and the children." The decision states: "* * * the testimony shows that the property was devised in trust to protect the daughter and her children." The testimony of the doctor was incompetent and the language in the decision referring to it is overruled. The remainder of the opinion is correct but is not here in point for the reasons above noted.

II.  Orville also prayed, in the alternative, the removal of Guy as trustee for misconduct in administering the trust and because the relations between the trustee and beneficiary had become so hostile and acrimonious that the trustee's continuance in office would be detrimental to the trust.

It is not contended Guy mishandled or misused trust funds. However, complaint is made that he refused to give Orville money requested by the latter on several occasions and also refused to turn over the corpus of the trust to Orville for the purchase of a home. As to the requests for money the record shows Guy arranged for loans to be repaid by Orville from funds coming to him from his father's estate. Guy agreed also to permit Orville to use the trust fund to purchase a home provided title to the same was placed in the trustee. We do not agree with the contention Guy's conduct in the foregoing transactions was arbitrary or unreasonable. We do not imply Guy was required to make any arrangement for Orville to secure advancements, or to use the trust fund for a home for Orville. That question is not before us. However, we will observe the exercise of discretion by the trustee is subject to review by the court and to correction if abuse is found. McClintock v. Smith, 238 Iowa 964, 969, 29 N. W. 2d 248; Keating v. Keating, 182 Iowa 1056, 1069, 165 N. W. 74; In re Trusteeship of Cool, 210 Iowa 30, 34, 230 N. W. 353.

The evidence does not sustain the charge that the relations between Guy and Orville had become so hostile and acrimonious as to be detrimental to the trust. Without detailed discussion we will say it shows little more than dissatisfaction on the part of Orville because the trustee declined to make dis-

166

bursements requested by Orville. We agree with the conclusion of the trial court that it was insufficient to justify the removal of the trustee. In re Trust of Sexauer, Iowa, 287 N. W. 247.— Affirmed.

All JUSTICES concur.