IN RE ESTATE OF CHARLES A. MANAHAN, deceased.

No. 51080.

(Reported in 125 N.W.2d 135)

DECEMBER 10, 1963.

Mossman & Mossman, of Vinton, for appellants.

Fitzgibbons & Fitzgibbons, of Estherville, for appellee.

MOORE, J.—Dr. Charles A. Manahan died February 25, 1959, leaving a last will dated June 30, 1953. By its terms he

left all his property in trust with the income therefrom going to his second wife, Lois Manahan, and his two daughters, Alberta Mae Long and Dorothy Marie Elson, during their lifetime, subject to the provisions for payment of educational expenses. The remainder was left to the children of his two daughters. Lois and the daughters were named co-executrices. The preliminary inheritance tax report estimated the value of the entire estate at $249,538.46.

Lois elected not to take under the will. Thereafter she entered into a court-approved agreement with the other two co-executrices settling her distributive share of the real estate acquired by decedent subsequent to their marriage for $50,000. She then resigned as a co-executrix.

Paragraph 5 of the will provides:

" '5. It is my wish that my grandchildren, including the children of Ernest Hanover, shall receive whatever education they desire. I wish to encourage the grandchildren to do graduate work if they are so inclined, and this graduate work does not have to be continuous. Therefore, if any of my grandchildren, including the children of Ernest Hanover, are not able to go to college or graduate school without having to work for their board or room, or tuition or books, and if such child or person shall request financial assistance from the co-executrixes of my estate, such assistance as is necessary shall be given from the income of my estate, prior to the distribution of the income to the life tenants, providing two of the three co-executrixes, or one of the survivors of the co-executrixes, believe that without such assistance such child or person would have to work while in school. As the grandchildren reach suitable age, they are to be informed of these facts. This paragraph is to be applicable only while at least one of the three life tenants is living.' "

July 11, 1961, Lois Manahan's grandson, Jeffery Ernest Hanover, 19, by Ernest Hanover, his father and next friend, filed in the Manahan estate an application for educational expenses of $2100 for the college year 1961-62. The two remaining executrices without inquiry denied his application and

filed resistance thereto, alleging lack of knowledge and asked the court to deny and dismiss the application.

The issues raised by the application and resistance were submitted to the trial court as a probate proceeding commencing June 11, 1962. After listening to the testimony of several witnesses and a study of the exhibits introduced, the court found claimant is a child of Ernest Hanover mentioned in paragraph 5 of the will and entitled to the benefits therein provided. The court found claimant was a student in New Mexico State University, was unable to go to college without having to work for his board, room, tuition and books, the reasonable and necessary assistance for the college year 1961-62 was over $2100, the estate income was sufficient to pay the claim and the discretion given the co-executrices by paragraph 5 was not an arbitrary but only a sound discretion to be exercised in the light of the facts and actual circumstances.

From the court's order allowing claimant $2100 as educational expenses for the college year 1961-62 the co-executrices have appealed.

They assert the court erred in finding abuse of discretion, the applicant qualified for assistance in the amount allowed, and there was sufficient income to pay educational expenses. They also argue that oral applications of other beneficiaries named in paragraph 5 have been denied and the allowance gives the applicant here a preference over other claims and debts of the estate.

Appellants seem to argue this claim is here triable de novo. That of course is not correct. In re Estate of Wulf, 242 Iowa 1012, 1016, 48 N.W.2d 890, 892, 33 A. L. R.2d 698, states: "The proceeding was in probate, was tried as an ordinary action, and the findings of the trial court are conclusive in so far as supported by substantial evidence. [Citations] * * * And our rule in Iowa is that all proceedings in probate are triable as ordinary actions unless there is some special statutory provision to the contrary." See sections 611.3, 611.4, 611.5 and 635.59, Iowa Code. Citation of other authority is unnecessary. Rule 344(f)1, Rules of Civil Procedure.

The trial court having heard this application following

the completion of applicant's college year 1961-62 at New Mexico State University had the benefit of testimony and exhibits showing applicant's school record, his actual expenses, the source of funds expended and his work record. He chose this school because his doctor advised him to go to a drier climate. He has rheumatism and a sinus condition which causes severe headaches.

Between twelve and thirteen hundred students enrolled in the freshman class in the fall of 1961. By the end of the school year only eight hundred remained. The reduction was due to drop-outs and failures. Applicant was one of the survivors. His major was chemistry. His first semester average was 2.2. His second semester average was 2.5 (2 is a C).

His expenses for that college year were:

| "Tuition | $ 572.00 |
|---|---|
| Room | 240.00 |
| Board (including meals, during holidays when he was on campus) | 529.00 |
| Books | 100.00 |
| Clothing | 150.00 |
| Laundry, toothpaste, other personal effects and entertainment | 360.00 |
| Transportation expense to and from New Mexico not including meals | 126.00 |
| Slide rule, paper, pencils and other supplies | 25.00 |
| Health insurance | 8.25 |
| | $2,110.25" |

Applicant worked from January 1 to September 1, 1961. He earned $600 which was spent for clothing and other items before starting to college. To pay expenses applicant cashed an $1100 life insurance policy his father had paid up for him, used his $77 income tax refund, borrowed $800 from the bank at Armstrong, Iowa, his home town, and was given some financial help by his parents. During the summer of 1962 he was working to pay part of the note to the bank. He estimated his earnings during the summer would enable him to pay $450 on that

obligation. During his college year applicant attempted to obtain work but was unable to do so. The loan from the bank resulted.

Applicant's parents' income for 1961 totaled $7929 which co-executrices argue was sufficient from which to pay the son's college expenses and applicant was therefore not compelled to work. The parents submitted evidence of family and other expenses in excess of the year's income. They have two younger children. The father suffered a heart attack in 1961. The parents testified they had been unable to give applicant more financial help than was furnished. The trial court apparently believed the parents.

Co-executrices testified some of their children had made oral requests for educational expenses which they refused prior to applicant's written request. No such requests were on file or submitted to the trial court. Perhaps no such requests were pursued because the children were remaindermen. Without proof of the number or amount of any such requests no issue as to their allowance or their effect on claimant's application was presented to the trial court.

The record discloses Lois Manahan took the homestead for a credit of $12,500 on her settlement and although the agreement provided for full payment within six months the co-executrices were using income from the trust to pay her. The balance owing to her at time of trial was $11,700. There was plenty of income for payment of educational expenses had co-executrices so desired.

Co-executrices point out that in paragraph 3 of the will testator admonishes them to avoid extravagances and use income carefully. They contend this admonition, when read with "assistance as is necessary" and "provided two of the three co-executrices, or one of the survivors of the co-executrices, believe that without such assistance such child or person would have to work while in school" as found in paragraph 5, gives them discretion in considering applications for educational expenses.

The trial court held sound and not arbitrary discretion was given them. We agree.

 The exercise of discretion by the co-executrices (trustees) is subject to review by the court and to correction in a proper case. In re Estate of Tone, 240 Iowa 1315, 1321, 39 N.W.2d 401, 405; In re Estate of Roberts, 240 Iowa 160, 165, 35 N.W.2d 756, 759; Keating v. Keating, 182 Iowa 1056, 1069, 165 N.W. 74, 77, 78; 54 Am. Jur., Trusts, section 181, page 143; 90 C. J. S., Trusts, section 261, page 308.

 Restatement, Trusts 2d, section 187, comment d, page 403, states:

"d. Factors in determining whether there is an abuse of discretion. In determining the question whether the trustee is guilty of an abuse of discretion in exercising or failing to exercise a power, the following circumstances may be relevant: (1) the extent of the discretion conferred upon the trustee by the terms of the trust; (2) the purposes of the trust; (3) the nature of the power; (4) the existence or nonexistence, the definiteness or indefiniteness, of an external standard by which the reasonableness of the trustee's conduct can be judged; (5) the motives of the trustee in exercising or refraining from exercising the power; (6) the existence or nonexistence of an interest in the trustee conflicting with that of the beneficiaries."

 In 90 C. J. S., Trusts, section 261, pages 308, 309, 310, it is said:

"The court will, however, interfere with the exercise of a trustee's discretion where there is shown bad faith on his part, fraud, malice, misbehavior, misconduct, abuse of authority, a gross and arbitrary abuse of discretion, or where on the part of the trustee or fiduciary there is a complete or arbitrary refusal to act in the premises, or acting in a state of mind not contemplated by the settlor, or failure to exercise discretion in a reasonable manner."

 Here the intention of Doctor Manahan to furnish funds from trust income for educational expenses to his grandchildren, including the children of Ernest Hanover, if they would have to work for their board, room, tuition or books, is clearly stated. No construction by the court is needed when the meaning of the trust instrument is clear and unambiguous. In re Estate of

McCulloch, 243 Iowa 449, 457, 52 N.W.2d 67, 72; Rodenburg v. Rodenburg, 247 Iowa 444, 447, 74 N.W.2d 241, 243.

Thus the discretion or judgment of the co-executrices was limited to a determination of whether applicant qualified under those express terms for any income available for educational expenses. This they failed to exercise but without inquiry rejected and resisted his claim. In fairness to them it might be reasonable to infer they recognized their conflict of interest as beneficiaries entitled to such income as not spent for educational expense, and preferred to allow the court to exercise sound discretion and judgment. Whatever their reason, under the well established rules the court had the right and duty to hear and decide claimant's application.

Upon a review of the record, we hold the trial court was justified in hearing and deciding claimant's application. The findings of fact are supported by substantial evidence.— Affirmed.

All JUSTICES concur.