In re TRUSTS A & B Created under the Last Will and Testament OF Rube DIVINE a/k/a Ruben Divine.

No. A03–405.

Court of Appeals of Minnesota.

Jan. 6, 2001.

James F. Baldwin, Gregory J. Wiley, Moss & Barnett, P.A., Minneapolis, MN, (for appellant Perry Divine).

Alan I. Silver, Jessica Mason Pieklo, Bassford Remele, P.A., Minneapolis, MN, (for respondent U.S. Bank National Association).

Robert D. Schwartz, St. Louis Park, MN, (for respondent estate of Patricia Divine).

Arnold Schribman, Plymouth, MN, (for respondents Dianne Divine and Neil Boderman).

Considered and decided by KLAPHAKE, Presiding Judge; WILLIS, Judge; and ANDERSON, Judge.

## OPINION

WILLIS, Judge.

In this dispute, arising from the trustees' motion for an order approving an accounting for two trusts, appellant challenges the district court's grant of summary judgment to the trustees. Appellant argues that there are genuine issues of material fact that preclude summary judgment and that the district court erred (1) in its interpretation of the term "sole discretion" as it is used in the trusts; (2) by concluding that the exculpatory clause in one of the trusts is valid and enforceable; and (3) by relying on extrinsic evidence of the settlor's intent, including inadmissible hearsay evidence. Because we find no error by the district court, we affirm.

## FACTS

Appellant Perry Divine is the sole current beneficiary of a testamentary trust created by his now-deceased father, Ruben Divine, and respondent U.S. Bank is one of the trustees. In 1983, Ruben Divine created two trusts, Trust A and Trust B, and named as trustees First Trust Company; respondent Neil Boderman, a long-time friend; and Patricia Divine, Ruben Divine's wife and appellant's mother. In 1991, American Bank and Trust Company, which later became Firstar Bank and ultimately respondent U.S. Bank, became corporate trustee.

Appellant's parents were co-owners of the Enivid Corporation, whose sole asset is a commercial building in Saint Paul, and each parent owned half of Enivid's 50 shares of stock. Ruben Divine died in 1986, and his 25 shares of Enivid stock became assets of the trusts, with 18 shares being held by Trust A and seven shares by Trust B. The trusts also hold interests in various limited partnerships, all of which are highly illiquid and none of which has ever generated significant income.

Trust A provides that appellant's mother, who died in May 2001, was entitled to all of the net income generated by Trust A. During her lifetime, the trustees also were required to distribute to appellant's mother

> such sum or sums out of the principal of the trust as the Trustees, in their sole discretion, shall deem advisable for maintenance, care and support, taking into consideration in making such payments the then size of the trust, the station of life to which she has been accustomed, and her probable future requirements.

Appellant's mother could also "require the Trustees to distribute" to her up to $10,000 per year from the principal of Trust A. Finally, pursuant to the provisions of Trust A, its corpus was to be transferred to Trust B when appellant's mother died.

Trust B provides that the trustees "pay ... the net income from the trust to [appellant's mother] during her lifetime or [appellant], or both of them." Trust B further provides that

> the Trustees may pay such amounts of principal from the trust as [U.S. Bank], in its sole discretion, shall deem necessary for the support and maintenance of [appellant's mother] and for the support and maintenance of [appellant], taking into consideration the station of life to which they have been accustomed, the

then size of the trust estate, their probable future requirements and their other assets.... [T]hese discretionary provisions [shall] be construed liberally and applied in [appellant's mother's] interest and for her benefit, and ..., in the event of any doubt or conflict of interest, the rights and interests of all others hereunder [shall] be dealt with by [U.S. Bank] as subordinate and secondary to her rights and interests[.] ... [U.S. Bank] may rely upon and need not verify the statements of [appellant's mother] as to her other assets and its judgment as to the amount and advisability of such discretionary payments shall be final and conclusive upon all persons interested in [Ruben Divine's] estate, and upon making any such payments, [U.S. Bank] shall be released and discharged from all further liability or accountability therefor.

Prior to 1991, appellant's mother received $5,000 per month from Trust A, an amount slightly greater than the trust's net income, and all of the net income from Trust B. U.S. Bank, Boderman, and appellant's mother met "several" times in 1991 to discuss the trust assets and to determine whether they would ever provide significant income to the trusts. The trustees decided to continue monthly distributions of $5,000 from Trust A to appellant's mother, in addition to the annual $10,000 distribution that she could demand. From 1990 through 1996, appellant's mother also received distributions from Trust B in excess of $80,000. Because of U.S. Bank's concerns about rapid depletion of the assets of Trust A, the trustees decided in 1997 to distribute to appellant's mother a total of $5,000 per month from the two trusts' income and principal.

At the time of the 1991 meetings, the trustees decided to make distributions from Trust B to appellant's mother and not to appellant because of "concerns about [appellant's] stability, and his ability to manage money." The record shows that appellant began treatment for depression in 1991 and that he had not supported himself since then. Except for a four-month period in 1998 during which Boderman employed him, appellant had been unemployed continuously since 1991. The record also shows that appellant's mother used funds she received from both trusts to support appellant and his family. Indeed, appellant testified that his mother paid all of his living expenses from 1991 or 1992 until her death.

In April 2000, appellant met with a representative of U.S. Bank and requested a distribution of $50,000 from the trusts to finance an "air taxi business." U.S. Bank discussed appellant's request with his mother, and she instructed U.S. Bank to discontinue her monthly distributions and to distribute the money to appellant. Over the course of ten months beginning in May 2000, appellant received $50,000 from the trusts, but he failed to start the air-taxi business.

During the summer of 2000, appellant's mother met with a U.S. Bank representative and discussed distribution of Enivid shares from Trust A to her. Appellant's mother had been diagnosed with cancer, and, as part of her estate planning, she had created her own testamentary trust to hold her 25 Enivid shares. The trust was for the benefit of appellant's children, and appellant's mother named as co-trustees her attorney and her former daughter-in-law, Dianna Lynn Divine, who is appellant's former spouse. Appellant's mother expressed concern that "leaving [appellant] and Dianna (as trustee) as 50/50 partners in Enivid created a risk of conflict ... which could have an adverse impact on her grandchildren."

In December 2000, U.S. Bank approved the distribution of two shares of Enivid from Trust A to appellant's mother. U.S. Bank valued Enivid at $6,000 per share, based on "a prior appraisal and the real estate tax statement for the company's building and the value of its mortgage." U.S. Bank made the distribution based on (1) the right of appellant's mother to demand distribution from the principal of Trust A; (2) the bank's "deference to [her] judgment as to the best way to ensure the support of [appellant] and [appellant's] children following her death"; (3) the bank's "understanding of [Ruben Divine's] directive in his will that the trustees apply the trust distribution provisions for" the benefit of appellant's mother; and (4) the bank's "independent judgment that [appellant] had not shown that he would be capable of appropriately controlling the family corporation."

In August 2001, U.S. Bank and Boderman moved the district court for an order approving an accounting for Trust A and Trust B for the period from March 1, 1996, through February 28, 2001. Appellant objected, contending that the trustees failed to prudently invest the trusts' assets, improperly made distributions to his mother instead of to him, and improperly distributed the two shares of Enivid to her.

The trustees moved for summary judgment. In support of his opposition to the trustees' summary-judgment motion, appellant submitted the affidavit of a trust expert, who opined that the trustees breached their fiduciary duty to appellant by (1) distributing the two Enivid shares from Trust A to appellant's mother because the distribution created "a situation where the Trusts had a minority interest in what had been a family-owned business" and a "prudent trustee would not have permitted a transfer of trust assets that he knew was intended to be a transfer to a

non-beneficiary"; (2) having "inappropriately valued the shares of Enivid" because a "prudent trustee would have valued the shares by evaluating all of the pertinent facts and financial data with respect to Enivid"; and (3) "not participating in the management of Enivid Corporation." The district court granted summary judgment for the trustees, and this appeal follows.

## ISSUES

I.  Are there genuine issues of material fact that preclude summary judgment?

II.  Did the district court err in its interpretation of the term "sole discretion" as it is used in the trusts?

III.  Did the district court err by concluding that Trust B's exculpatory clause is valid and enforceable?

IV.  Did the district court err by relying on extrinsic evidence of the testator's intent, including inadmissible hearsay evidence?

## ANALYSIS

On appeal from summary judgment, a reviewing court asks two questions: (1) whether there are any genuine issues of material fact and (2) whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The reviewing court views the evidence in the light most favorable to the party against whom the judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

### I.

Appellant argues that there are genuine issues of material fact regarding (1) whether the trustees acted contrary to Ruben Divine's testamentary intent by distributing the two Enivid shares from Trust A to appellant's mother; (2) whether the trustees breached their fiduciary duty to ap-

pellant by distributing the two Enivid shares, by improperly valuing them, or by imprudently managing Enivid; and (3) whether the trustees complied with the trusts' distribution provisions.

Actions Alleged to Be Contrary to Settlor's Intent

Appellant contends that the trustees acted contrary to Ruben Divine's testamentary intent by distributing the two Enivid shares from Trust A because his father intended that control of Enivid would never pass to someone outside his immediate family. The district court concluded that it was "consistent with [Ruben Divine's] intent [] not to leave control of Enivid equally divided between [appellant] and the trust in which his ex-wife" was a trustee.

▪ The principal purpose of construing a will is to ascertain the testators intent at the time of execution. *In re Wyman*, 308 N.W.2d 311, 315 (Minn.1981). Extrinsic evidence of the meaning of a will is admissible only when the text of the will is ambiguous. *In re Will of Hartman*, 347 N.W.2d 480, 483 (Minn.1984); *cf. Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn.1979) (stating that the meaning of a written contract presents a question of law unless there is ambiguity and construction depends on extrinsic evidence, in which case it becomes a question of fact).

▪ Appellant asserts that there is a genuine issue of material fact concerning his father's intent, but he does not contend that the language of the will is ambiguous, and nothing suggests that the district court relied on extrinsic evidence when determining Ruben Divine's testamentary intent as it relates to the distribution of Enivid shares from Trust A. Appellant's contention concerning his father's intent therefore presents a question of law, which

we review de novo. *See Frost Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

▪ In the event that appellant dies before complete distribution of the income and principal of Trust A, the will establishing the trusts provides for distribution to appellant's children; then to Dianna Lynn Divine, his spouse at the time the will was executed; and finally to Ruben Divine's niece and nephew. Accordingly, the plain language of the trusts indicates no intent on the part of Ruben Divine to keep control of Enivid within his immediate family. Further, the language of Trust A, which held the Enivid shares at issue, specifically gives the trustees the discretion to make distributions from the principal of Trust A to appellant's mother. We conclude, therefore, that distribution of the two Enivid shares from Trust A to appellant's mother was not contrary to Ruben Divine's testamentary intent.

Alleged Breach of Fiduciary Duty

▪ Appellant also asserts that there is a genuine issue of material fact regarding whether the trustees breached their fiduciary duty to him by distributing the two Enivid shares to his mother, by improperly valuing the shares, and by imprudently managing Enivid. In an action for breach of fiduciary duty by a professional trustee, "the plaintiff 'must present evidence of the applicable standard of care, and that the standard of care was breached.'" *In re Trusteeship of Williams*, 631 N.W.2d 398, 406 n. 8 (Minn.App.2001) (quoting *Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 116 (Minn.1992)), *review denied* (Minn. Sept. 25, 2001). But a professional trustee is not required to "conform its conduct to a standard of care unless a legally recognized duty exists." *See ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 307 (Minn.

1996). And while expert testimony regarding industry custom is "important in establishing a standard of care, [the testimony] does not by itself establish a legal duty to exercise that care." *Id.; see also Potter v. Pohlad,* 560 N.W.2d 389, 395 (Minn.App.1997) (holding that "conclusory statements of an expert" will not preclude summary judgment), *review denied* (Minn. June 11, 1997).

■ Here, appellant's expert does not raise fact issues but instead makes conclusory statements about whether the trustees' actions, the facts of which are undisputed, constituted a breach of fiduciary duty. Rather than raising a genuine issue of material fact, appellant appears to argue that the trustees had a legal duty not to distribute the two Enivid shares to his mother, to value the shares differently, and to manage Enivid differently than they did. The existence of a legal duty is a question of law, which we review de novo. *Williams,* 631 N.W.2d at 404.

Appellant cites no authority for the proposition that the trustees had a legal duty not to distribute the two Enivid shares to his mother, and we find support in the record for the proposition that the distribution of shares was consistent with the trustees' duty to administer the trusts for the benefit of appellant and his mother. The record shows that the trustees had reason to believe that appellant was unable to manage Enivid responsibly. Avoiding an even division in ownership between Trust B and the trust of which appellant's former spouse was a trustee allowed appellant's mother to ensure the appropriate management of Enivid and, thereby, to provide not only for appellant's children but also for appellant.

Regarding the value that U.S. Bank attached to the shares, appellant argues that his expert's opinion establishes that the shares were not valued correctly. To be

sure, U.S. Bank explained the basis for its valuation. But even if the shares of Enivid were worth substantially more than $6,000 each, the share price is relevant only if the trustees were limited in the amount that they could distribute to appellant's mother. And the record shows that they were not; rather, the distribution of the shares from Trust A was made pursuant to the trustees' right, in their "sole discretion," to make distributions of principal to appellant's mother. We conclude, therefore, that there is no genuine issue of material fact regarding whether U.S. Bank breached its fiduciary duty to appellant.

Appellant also fails to cite any support for his contention that the trustees had a legal duty to manage Enivid differently than they did. Likewise, neither appellant nor his expert identifies particular activities of Enivid that were allegedly improper or would have been prevented or corrected by closer monitoring from the trustees.

Compliance With Trusts' Distribution Provisions

Appellant further claims that there is a genuine issue of material fact regarding whether the distributions to his mother and to him were made in compliance with the provisions of the trusts. Again, appellant raises no fact issues regarding the distributions, instead contending that the distributions, the facts of which are undisputed, did not comply with the terms of the trusts as a matter of law.

Appellant claims that his mother spent more than $200,000 from the trusts to gamble at casinos from 1996 through 2000. In fact, the record shows only that there were checks drawn for "cash" and "casinos" in that amount, and cashing a check at a casino is not the equivalent of a gambling loss in that amount. Appellant asserts that distributions made to his mother for gambling could not have been made for

her "maintenance, care, and support," as Trust A requires, or for her "support and maintenance," as Trust B requires.

But Trust A vests "sole discretion" for distributions in the trustees, and Trust B vests "sole discretion" in U.S. Bank.[1] Appellant does not contend that his mother received excessive distributions from the trusts. Indeed, the record shows that the amount of her monthly distribution was reduced in 1997 when it became apparent that the trusts would not generate sufficient income to continue distributions at their previous level. Further, in 2000 and 2001, appellant's mother voluntarily stopped receiving her monthly distributions over a period of ten months, directing the trustees to make the distributions instead to appellant to fund the air-taxi business that he proposed to start.

Appellant's contention that the trustees' failure to make distributions to him violated the terms of Trust B also fails to raise a genuine issue of material fact. Appellant does not dispute the basis of the trustees' decision to make distributions to his mother instead of to him, which was the trustees' determination that appellant had demonstrated emotional instability and the inability to manage his finances effectively. The language of Trust B gave the trustees the right to distribute income only to appellant's mother during her lifetime and, further, gave U.S. Bank sole discretion over distributions of principal.

We conclude that appellant raises no genuine issue of material fact that precludes summary judgment. Appellant's contentions regarding Ruben Divine's testamentary intent, the trustees' alleged breach of fiduciary duty, and whether they complied with the trusts' distribution provisions are legal arguments, and we find each of them unpersuasive.

## II.

■ Appellant further argues that the district court erred in its interpretation of the term "sole discretion" as it is used in the trusts. The district court, citing *White Stone Partners L.P. v. Piper Jaffray Cos.*, 978 F.Supp. 878, 882–83 (D.Minn.1997), concluded that "the person to whom sole discretion is vested will be exposed to liability only for dishonest conduct, not for the exercise of discretion, even if the trustees' decisions are unreasonable." But *White Stone* is a U.C.C. case concerning the implied covenant of good faith and fair dealing in a commercial contract. Appellant contends that the proper standard here is whether the trustees abused their discretion, and he asserts that the trustees did so with regard to the distribution of two Enivid shares from Trust A to appellant's mother.

The well-settled rule in Minnesota is that the courts will not substitute their discretion for that of a trustee except when necessary to remedy an abuse of discretion. *In re Campbells Trusts*, 258 N.W.2d 856, 866 (Minn.1977). What constitutes an abuse of discretion by a testamentary trustee, however, appears to be an issue of first impression in Minnesota.

■ Citing the Restatement (Second) of Trusts, the Iowa Supreme Court has enumerated six factors for determining whether a trustee has abused its discretion. *See In re Manahans Estate*, 255 Iowa 1060, 125 N.W.2d 135, 138 (1963). The factors are

(1) the extent of the discretion conferred upon the trustee by the terms of

---

**1.** The district court's interpretation of "sole discretion," and appellant's assignment of error thereto, is discussed below in Section II.

the trust; (2) the purposes of the trust; (3) the nature of the power; (4) the existence or non-existence, the definiteness or indefiniteness, of an external standard by which the reasonableness of the trustee's conduct can be judged; (5) the motives of the trustee in exercising or refraining from exercising the power; [and] (6) the existence or nonexistence of an interest in the trustee conflicting with that of the beneficiaries.

*Id.* The Eighth Circuit has adopted the same factors, *see, e.g., Cox v. Mid–America Dairymen, Inc.,* 965 F.2d 569, 572 (8th Cir.1992), and we do so now.

When we consider these six factors, we conclude that appellant has failed to show that the trustees abused their discretion. First, the extent of the discretion conferred on the trustees to make distributions of Trust A principal is broad; Ruben Divine gave the trustees "sole discretion." Further, the trusts were established to benefit appellant and his mother, and nothing suggests that the distribution was not made for this purpose. The nature of the power to decide the amount of distributions and to whom they are paid also does not convince us that the trustees' actions were an abuse of discretion.

Appellant cites nothing in the record that establishes a definite external standard against which to measure the reasonableness of the trustees' actions; as discussed above, the affidavit of appellant's expert contains only conclusory statements regarding whether the trustees breached their fiduciary duty, without suggesting a standard for determining the reasonableness of their actions. Further, the trustees' motives in exercising their discretion included legitimate concerns about appellant's inability to manage his own finances or to manage the family corporation. Appellant alleges no improper motive, and he likewise fails to allege any interest on the part of the trustees that conflicts with his interests as a beneficiary of Trust B. We conclude, therefore, that the trustees did not abuse their discretion by distributing the two Enivid shares from Trust A to appellant's mother.

## III.

Appellant also argues that the district court erred by concluding that Trust B's exculpatory clause is valid and enforceable. The district court determined that the exculpatory clause "protects the corporate trustee against any liability with respect to the amount and advisability of discretionary distributions." Appellant asserts that the provision is unenforceable and, in any event, does not excuse the trustees' actions with respect to distributions from Trust A, which he asserts constitute a breach of fiduciary duty.

In *In re Trusteeship of Williams,* 591 N.W.2d 743, 751 (Minn.App.1999), this court held that, "[d]ue to the strict construction given exculpatory clauses and the higher standard of care required of professional trustees, the law now requires strong evidence or explicit language that the grantor intended the clause to exculpate a professional trustee." Appellant urges a strict construction of the exculpatory provision here and asserts that it applies only to discretionary distributions of principal from Trust B by U.S. Bank to appellant's mother.

The language of the trust certainly supports such an interpretation. But appellant does not suggest how such a narrow reading would change the outcome of the summary-judgment proceeding. Even if the exculpatory clause does not absolve the trustees from liability in connection with distributions of principal or income from Trust A or income from Trust B, appellant has not shown that the trustees made any

improper distributions of principal or income that might create liability.

## IV.

■ Appellant argues finally that the district court improperly relied on extrinsic evidence of Ruben Divine's testamentary intent, including inadmissible hearsay evidence. Extrinsic evidence of the meaning of a will is admissible only when the text of the will is ambiguous. *Hartman,* 347 N.W.2d at 483. When deciding any summary-judgment motion, the district court must disregard hearsay evidence that would be inadmissible at trial. *Murphy v. Country House, Inc.,* 307 Minn. 344, 349, 240 N.W.2d 507, 511 (1976).

Appellant asserts that the district court's finding regarding appellant's "personal and emotional problems, lack of responsibility in handling finances, and inability to support himself" shows that the court considered extrinsic evidence of Ruben Divine's testamentary intent. What appellant characterizes as the court's "derogatory statements" about him were supported by appellant's own testimony. Further, the court cited this finding regarding appellant not as evidence of his father's testamentary intent but, rather, as a basis for concluding that the trustees' decision to make distributions to appellant's mother instead of to appellant was justified.

■ Appellant also asserts that the affidavit of appellant's mother was hearsay evidence that the court should not have considered. The record shows, however, that appellant admitted the truthfulness of almost all of the assertions in his mother's affidavit. Finally, nothing in the record shows that appellant objected in the district court to admission of the evidence, and this court will not consider issues that were not previously presented to and decided by the district court. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988).

## DECISION

There are no genuine issues of material fact that preclude summary judgment. Further, the district court did not err (1) in its interpretation of "sole discretion" as it is used in the trusts; (2) by concluding that Trust B's exculpatory clause is valid and enforceable; or (3) by relying on extrinsic evidence of the testator's intent.

**Affirmed.**