**In the Matter of the TRUST KNOWN AS the Harry L. SPENCER, Mary E. Spencer, and Gertrude Whittier Spencer Lacy MEMORIAL FUND, Under Last Will and Testament of W. Seymour Lacy, Deceased.**

**Mid–Iowa Council of Boy Scouts of America, Inc., Appellant,**

v.

**Norwest Bank Iowa, N.A., Trustee, and Mahaska County Boys, Inc., Appellees.**

No. 99–1198.

Supreme Court of Iowa.

Feb. 27, 2002.

Mark McCormick and Steven M. Colloton of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, for appellant.

David D. Dixon of Heslinga, Heslinga & Dixon, Oskaloosa, for appellees.

CARTER, Justice.

This dispute concerns the distribution of proceeds from a testamentary trust. Objections were filed to the trustee's annual report asserting that Mid–Iowa Council of Boy Scouts of America, Inc. (Mid–Iowa Council), a regional administrative division of the Boy Scouts of America, was not using the annual distributions it received in accordance with the testator's directions. The objector is Mahaska County Boys, Inc. (Boys, Inc.), a nonprofit corporation organized for the sole purpose of providing resources for boy scout activities in Oskaloosa, Iowa. Its members consist of current and former scout leaders in the community. Boys, Inc. sought a ruling from the district court directing the annual charitable distribution that the testator provided for "the exclusive benefit of the activities of the boy scouts in Oskaloosa, Iowa," be distributed to it rather than to Mid–Iowa Council.

The district court found that Mid–Iowa Council was not using the trust proceeds it received in the manner directed by the testator and ordered the trustee to make current and future distributions to Boys,

Inc. rather than Mid–Iowa Council. Mid-Iowa Council challenges this ruling on this appeal. After reviewing the record and considering the arguments presented, we affirm the judgment of the district court as modified by this opinion.

The testator was W. Seymour Lacy who died in the state of New York on December 10, 1957. His will was admitted to probate in New York but the trustee named therein was the Iowa Des Moines National Bank. Court supervision of the portion of the trust at issue here has, since the inception of the trust, been carried out in the Iowa District Court for Mahaska County.

Mr. Lacy's will provided, in part, as follows:

SEVENTH: All the rest, residue and remainder of my estate, real and personal, wheresoever situated, of which I shall die seized or possessed, or to which I may in any way be entitled, or over which I may have any power of testamentary disposition, including any lapsed legacy, all of which is hereinafter referred to as my "residuary estate," I dispose of as follows:

. . . .

C. I give, devise and bequeath my residuary estate to the IOWA–DES MOINES NATIONAL BANK, as Trustee, in trust, to hold, manage and administer the trust estate, which shall be known as "THE HARRY L. SPENCER, MARY E. SPENCER and GERTRUDE WHITTIER SPENCER LACY MEMORIAL FUND," and shall be construed to be a charitable trust, collect the income therefrom and distribute the income thereof as follows:

. . . .

(b) To each of the following charitable organizations operating in the City of Oskaloosa, Mahaska County, Iowa, the birthplace of my wife, and toward which I have an abiding and deep affection, I direct that there be paid annually in each fiscal year of the trust, commencing with the date of my death, the sum set after the name of each, to wit:

. . . .

(iv) The Southern Iowa Area Council of Boy Scouts of America, located at 302 East Main Street, Ottumwa, Iowa, One thousand Dollars ($1,000.00), for the exclusive benefit of the activities of the Boy Scouts in Oskaloosa, Iowa.

. . . .

*It has been the desire of my wife, Gertrude W. Lacy, and me, in planning the above program which has as its main purpose the assistance of the youth of Oskaloosa, that the additional assistance which this fund will bring to the efforts of the residents of Oskaloosa and its environs may serve to make the effectiveness of these Oskaloosa organizations outstanding when compared with like services provided by cities of the same size. . . . I request the Trustee to advise each of the above-named organizations annually, at the time its share of the income from this Fund is sent to it, of this expression of the hopes and desires of my wife and myself in planning this program.*

. . . .

(d) If in any fiscal year of the trust there is a surplus of net income remaining over and above the payments required to be made to the said Irene D. Roberts and Harriette L. Searle and the total of the distributions required to be made to the organizations specified in subdivisions "(a)" and "(b)" hereof, then and in that event such surplus shall be divided in fifti-

eths and distributed among the following organizations in the proportions set after the name of each:

. . . .

· (iii) The Southern Iowa Area Council of Boy Scouts of America, three-fiftieths (3/50) for the exclusive benefit of the activities of the Boy Scouts in Oskaloosa, Iowa.

(Emphasis added.) Due to a reorganization of boy scout councils in the state of Iowa, the Southern Iowa Area Council mentioned in Mr. Lacy's will is now the Mid–Iowa Council.

In August 1995 Boys, Inc. wrote to Mid–Iowa Council requesting an accounting of how it had used the proceeds received by the trust in prior years. It received a response from the council's lawyer stating only that "Mid–Iowa Council has responsibly handled its financial affairs, and received unqualified audits each year it has received funds from the Lacy Trust." On January 15, 1999, the trustee filed an annual report. Boys, Inc. objected to that report with respect to the proposed distribution to Mid–Iowa Council. It asserted that Mid–Iowa Council was not using the trust proceeds "for the exclusive benefit of the activities of the boy scouts in Oskaloosa, Iowa."

There are two boy scout troops in Oskaloosa. One is affiliated with the Central Methodist Church and the other is affiliated with the First Christian Church. Within the boy scout organizational structure, these churches are known as chartered partners. They participate in conducting the scouting program. Boy scout activity in Oskaloosa also includes two Cub Scout packs and an Explorer Scout crew. There are approximately 142 members in the local scout programs in Oskaloosa. The charter between the national boy scout program and each of the chartered partners provides that the chartered partner is to "conduct the scouting program according to its own policies and guidelines as well as those of the Boy Scouts of America."

The national organization of the Boy Scouts of America provides guidance to local scout organizations with respect to money raising projects. All fund-raising activities must be approved by the national organization. In addition, the national organization has in place bylaws governing financial operations. Money raised for the benefit of a local unit or property acquired by a local unit is deemed to be received solely for the benefit of scouting as interpreted and promoted by the Boy Scouts of America. Clause 2(d) of section 1 of article XI of the bylaws and articles of the Boy Scouts of America provides:

Special funds created for specific purposes acquired by a unit or local counsel, shall be vested in a bank, trust company, or BSA Investment Trust, in trust for the use of the unit or the local council, in accordance with the wishes of the donors . . . .

Mid–Iowa Council has received funds from the Lacy trust annually since 1971. Recent contributions have been approximately $8000 annually. Mid–Iowa Council has deposited the trust distribution in its general fund and used it to defray its operating costs in the twenty-seven counties of its geographical area. The record indicates that the amount of money expended by Mid–Iowa Council on behalf of scouting activities in Oskaloosa is based on a general formula that applies to all scouting programs of similar size within the district. Other facts that are relevant to our decision will be considered in connection with our discussion of the legal issues presented.

### I. *Interpretation of the Trust Language.*

■ We have recognized that in interpreting the language of testamentary

trusts, the intent of the testator governs. *First Nat'l Bank v. Mackey,* 338 N.W.2d 361, 363 (Iowa 1983); *In re Work Family Trust,* 260 Iowa 898, 901, 151 N.W.2d 490, 492 (1967). The meaning accorded to the language used is to be its usual and ordinary meaning. *In re Manahan's Estate,* 255 Iowa 1060, 1066, 125 N.W.2d 135, 138 (1963). We must apply these rules in deciding whether Mid–Iowa Council followed W. Seymour Lacy's wishes with respect to the use of the distributions it received from the trust.

■ In urging that it did comply with the testator's wishes, Mid–Iowa Council points to evidence that Oskaloosa's pro rata share of the council's district-wide annual costs exceeded the council's annual distribution from the Lacy trust. Thus, it argues the full amount of the annual distribution was spent on scouting programs in Oskaloosa. The flaw in this argument is that, in carrying out its mission, Mid–Iowa Council was obligated to provide some level of funding for the district-wide scouting programs that benefited Oskaloosa scouts had the Lacy trust not existed. The council's use of the trust distributions served to subsidize all scouting programs throughout the district.

The district court found and we agree that it was the intention of the testator "to give an advantage to the youth of Oskaloosa which would be over and above the benefits received by young people in other communities of the same size." We are convinced that Mid–Iowa Council was required to expend all of the annual distributions from the Lacy trust in a manner that discretely and directly benefited boy scout activities in Oskaloosa. The district court correctly concluded that the use of the trust distributions made by Mid–Iowa Council clearly did not accord with that requirement.

## II. *The Remedy.*

■ Upon upholding the district court's conclusion that Mid–Iowa Council has not been using the Lacy trust funds for the intended purpose, we must now consider whether the district court's method of remedying this misuse of the funds was proper.

The reason the district court chose to substitute Boys, Inc. as the entity to which the trust distribution should flow for the benefit of local scouting activities was Mid–Iowa Council's resolute inflexibility in declaring that it would not alter its ways. It has contended throughout this litigation that to spend this money solely on the scouting program in Oskaloosa would be contrary to basic principles of scouting. Boys, Inc. was viewed as an independent entity that would accept the trust proceeds and use them exclusively for the benefit of local scouting, thus carrying out the intent of the testator.

■ The district court concluded that it could justify changing the beneficiary under the doctrine of equitable deviation. That doctrine, recognized by this court in *In re McDonough Trust,* 252 Iowa 870, 881, 109 N.W.2d 29, 35 (1961), and described in Restatement (Second) of Trusts § 381 (1959), authorizes deviations from the methods provided for achieving the goals of the settlor, if the methods provided in the trust instrument are impracticable or impossible and the settlor's goals can be achieved by other methods. The doctrine is aimed primarily at administrative provisions in trusts. Mid–Iowa Council argues that the doctrine is a narrow one and does not allow for the substitution of a beneficiary.

In defense of the district court's ruling, we note that Mid–Iowa Council was not intended to be the ultimate beneficiary of these trust distributions but only a conduit

through which the proceeds passed for benefit of the local boy scout organizations. It is therefore not inaccurate to characterize the changes that the district court made as involving the administration of the trust. The problem we perceive with the substitution of Boys, Inc. as the entity to receive the trust distributions and expend the money on local scouting activities is that this places the decision making on matters affecting scouting programs in the hands of an organization that has no sanctioned ties to the Boy Scouts of America. We are convinced that Mid–Iowa Council, as the sanctioned representative of the Boy Scouts of America, should be the entity to decide how money is to be spent to carry out the boy scouts' mission. Consequently, we must modify the district court's ruling as it pertains to Boys, Inc.

The inflexibility of Mid–Iowa Council in its attitude toward the Lacy trust surprises us in light of the rather flexible language in clause 2(d) of section 1 of article XI of the bylaws and articles of the Boy Scouts of America pertaining to earmarked gifts to local units. Nevertheless, we believe that in the final analysis this is a decision that must be made by authority within the boy scouts organization. Its arguments on appeal reveal that Mid–Iowa Council, as the representative of organized scouting in this litigation, continues to adhere to the view that it is not in keeping with the underlying principles of scouting to lavish a substantial amount of money on a single local scouting program. Assuming that is true, our decision does not rest on whether Mr. Lacy's bequest was well advised.

If, as Mid–Iowa Council urges, it is contrary to basic principles of scouting to expend these funds for the exclusive use of scouting programs in Oskaloosa, then it should have, at the inception of the gifts, declined to accept them. We choose to give it that opportunity now. We remand the case to the district court with directions that Mid–Iowa Council may, within sixty days of the issuance of procedendo, file an unqualified declaration of its intention to administer the Lacy trust proceeds consistent with our conclusion that the trust distributions must be used in their entirety for the discrete and direct benefit of the boy scout programs in Oskaloosa. If Mid–Iowa Council fails to accept that invitation, the trustee is directed to make no further distributions to the Mid–Iowa Council and shall apply to the district court for directions for invoking the doctrine of *cy-pres* and substituting a different local charitable organization as the recipient of that portion of the Lacy trust distributions that was gifted to the boy scouts under Mr. Lacy's will.

The judgment of the district court is affirmed as modified by our opinion.

**AFFIRMED AS MODIFIED.**